[No. 57020–5. En Banc. April 25, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. FREDRIC
NOLTIE, *Petitioner.*

*Edwards, Sieh, Wiggins & Hathaway,* by *Charles K. Wiggins* and *John W. Hathaway,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Jeffrey B. Baird, Senior Deputy,* for respondent.

ANDERSEN, J.—
### FACTS OF CASE
Following a jury trial, the Court of Appeals affirmed the defendant Fredric Noltie's convictions of the crimes of statutory rape in the first degree and indecent liberties.[1] We granted review and affirm.

In 1984, the defendant married Joanne and began living with Joanne and her then 5–year–old daughter, M. At the 1987 trial of this case, M testified to a pattern of sexual abuse beginning shortly after the defendant and her mother's marriage.

From 1984 through 1987, the defendant lived with them in three residences; at trial M testified to specific instances of sexual abuse based upon her recollection of which house

---

[1]*State v. Noltie,* 57 Wn. App. 21, 786 P.2d 332, *review granted,* 114 Wn.2d 1019 (1990).

they were living in at the time. She testified that in the first two homes the defendant repeatedly asked her to rub his genitalia with her hand. She testified that in the third home he repeatedly engaged in fellatio with her. She was able, however, to describe the specific time and location for only one specific incidence of fellatio. She also described in detail an incident where he had asked her to have vaginal intercourse with him. M said that this had happened more than once, but, again, she was only able to recall the details surrounding one incident of vaginal intercourse. She testified that she did not tell her mother about this because the defendant had told her that her mom would go into a coma and go to a hospital if she were told.

M's mother testified that on May 13, 1987, she observed the defendant standing naked by M's bed and saw him place M's hand on his genitalia. She called their marriage counselors who scheduled a meeting. At this meeting Joanne told the two counselors of the May 13 incident. Joanne and the counselors testified at trial that the defendant had responded by saying that it was "no big deal" and that he was just instructing M in sex education. At trial, the defendant denied having made these statements. The marriage counselors called Child Protective Services and charges of statutory rape in the first degree and indecent liberties were ultimately initiated against the defendant.

The more detailed facts recited by the Court of Appeals in its opinion are not necessary for resolution of the issues before us, therefore, need not be repeated here. At trial, the defendant denied any improper sexual conduct with M.

The State presented expert testimony that medical examinations of M revealed physical evidence of sexual abuse. One physician used an instrument called a "colposcope" to take photographic slides of M's genital area and then utilized these slides to illustrate her testimony. The trial court denied a defense motion in limine to exclude evidence derived from colposcopic examination and physicians testifying for both the prosecution and the defense

utilized the photographs while presenting their opinions to the jury.

The defendant was charged with two counts of statutory rape in the first degree and one count of indecent liberties. The trial court denied a defense motion to dismiss one of the counts of statutory rape. During deliberations, the jury asked the court whether count 1 applied only to vaginal intercourse and count 2 only to oral intercourse. The court responded that the jury should reread the court's instructions. The jury convicted the defendant on count 1 (statutory rape in the first degree) and on count 3 (indecent liberties); it was unable to reach a verdict on count 2, the second count of statutory rape in the first degree, and the trial court declared a mistrial on that count.

In this court, the defendant challenges: (1) the trial court's refusal to excuse a juror; (2) the constitutionality of the information charging the crimes; and (3) admissibility of the colposcopic photographs. We are thus presented with the following three issues.

## ISSUES

ISSUE ONE. Did the trial court abuse its discretion in declining to excuse a juror for cause?

ISSUE TWO. Was the information charging the crimes so defective as to require reversal of the convictions?

ISSUE THREE. Did the trial court err in admitting colposcopic photographs into evidence?

## DECISION

ISSUE ONE.

CONCLUSION. The trial court did not abuse its discretion in denying defendant's challenge of a juror for cause based upon allegations of actual bias.

The defendant argues that the trial court's refusal to excuse a juror[2] for cause violated his right to an impartial

---

[2] In the Court of Appeals, the defendant also challenged the court's refusal to excuse a second juror for cause. However, that other juror was subsequently excused by a peremptory challenge and defendant does not argue that issue in his petition for review.

jury under the Sixth Amendment and Const. art. 1, § 22 (amend. 10).

The voir dire examination of this juror covers 16 pages of the appellate record. She was questioned by the deputy prosecutor, defense counsel and the trial judge. The juror had initially replied to the question whether she thought she would have some difficulty being fair in this case by saying that she "might". She explained that she had two little granddaughters and thought it would be traumatic when the child testified. She explained that her concern was that she might find it difficult to give the accused a fair trial; she repeatedly stated, however, that she hoped she would be fair and that she would try to be fair. When asked by defense counsel whether because of the nature of the charge and her fondness for children she might start out leaning in favor of one side, she responded:

That's what I was afraid of at first, yes. The more I've listened to the Court and the more I participated in it, it seems that it would be a lot easier to be fair, but at first I was very apprehensive about it.

The juror also stated that she felt it would be a terrible injustice to the defendant not to have a fair trial and not to have people see him as innocent. She further stated that she did not expect the defendant to have to present evidence in order to support the idea that he was innocent. She did say she might be influenced by the emotional aspects of a child's testimony, but when asked whether she would give greater weight to a child's testimony, she replied that she had never been on a jury before and that she didn't know but hoped that she would be "honest either way". She said it would be awful to be accused but when asked if she would want a person like her on the jury, she responded, "No, I don't think so . . . I don't know. I don't know. It is just, I guess children, I don't know."

The court assumed the voir dire questioning and stated "what you are expressing is a doubt that you would be fair and impartial, you are not saying that you would not be fair and impartial." The juror responded "I'm not saying I

won't be, no, I've never . . . been on anything like this so I would hope I would be fair." The court responded "you can't say positively that you are not going to be fair and you can't say that in all probability you won't be fair, it's just that you have the fear that you would not be?" The juror agreed.

The juror responded to defense counsel's question whether it was a possibility or a probability that she might start out leaning in favor of the State, that it was "just a possibility". The trial judge denied defendant's motion to excuse the juror for cause declaring that the dismissal of a juror for actual bias is based on probabilities, not on possibilities.

Juror bias is defined in RCW 4.44.170. This juror was a hospital employee and there was no evidence of any "implied" statutory bias as defined by RCW 4.44.170(1). The defendant argues that this juror should have been excused for cause because she was "actually biased". This case thus involves a challenge of a juror for actual bias, as contrasted with implied bias. RCW 4.44.170(1), (2).

Actual bias is defined in RCW 4.44.170 as follows:

> Particular causes of challenge are of three kinds:
>
> . . .
>
> (2) For the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this code as actual bias.

RCW 4.44.190 further discusses actual bias:

> A challenge for actual bias may be taken for the cause mentioned in RCW 4.44.170(2). But on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially.

*See also* CrR 6.4(c)(1), (2).

■ Washington cases have consistently held that the denial of a challenge for cause lies within the discretion of the trial court and will not constitute reversible error absent a manifest abuse of that discretion.[3] Actual bias differs from implied bias in that where implied bias exists, it is conclusively presumed from the facts shown; whereas, in cases where actual bias is claimed, it must be established by proof.[4]

The defendant argues that the Court of Appeals decision in this case conflicts with *Cheney v. Grunewald,* 55 Wn. App. 807, 780 P.2d 1332 (1989). We find no such conflict. In *Grunewald,* the court held that a juror in a DWI trial should have been excused because (1) he was a member of Mothers Against Drunk Drivers (M.A.D.D.); (2) his niece had been killed by a drunk driver and (3) he stated that he did not think the DWI defendant would get a fair trial from jurors with his frame of mind. The Court of Appeals there held that the combination of these factors constituted sufficient actual bias to justify the juror's removal for cause. In the present case, what the juror essentially indicated was a degree of discomfort about listening to an alleged child victim of sexual abuse and a fear that it would be difficult for her to be impartial. Factually this is a different kind of situation than *Grunewald,* wherein one of the juror's family members had actually been a victim of the same type of crime as that on which he was being asked to sit in judgment.

[2] In the present case, the voir dire testimony of the juror did not show that there was a probability of actual

---

[3]*State v. Rupe,* 108 Wn.2d 734, 748, 743 P.2d 210 (1987), *cert. denied,* 486 U.S. 1061; *reh'g denied,* 487 U.S. 1263 (1988); *State v. Gosser,* 33 Wn. App. 428, 433, 656 P.2d 514 (1982); *State v. Gilcrist,* 91 Wn.2d 603, 611, 590 P.2d 809 (1979).

[4]14 L. Orland & K. Tegland, Wash. Prac., *Trial Practice* § 202, at 330 (4th ed. 1986).

bias. We have recently and repeatedly held that equivocal answers alone do not require a juror to be removed when challenged for cause, rather, the question is whether a juror with preconceived ideas can set them aside.[5]

■ Case law, the juror bias statute, our Superior Court Criminal Rules and scholarly comment all emphasize that the trial court is in the best position to determine a juror's ability to be fair and impartial.[6] It is the trial court that can observe the demeanor of the juror and evaluate and interpret the responses.

> Considerable light will be thrown on the fairness of a juror by the juror's character, mental habits, demeanor, under questioning and all other data which may be disclosed by the examination. A judge with some experience in observing witnesses under oath becomes more or less experienced in character analysis, in drawing conclusions from the conduct of witnesses. The way they use their hands, their eyes, their facial expression, their frankness or hesitation in answering, are all matters that do not appear in the transcribed record of the questions and answers. They are available to the trial court in forming its opinion of the impartiality and fitness of the person to be a juror. The supreme court, which has not had the benefit of this evidence recognizes the advantageous position of the trial court and gives it weight in considering any appeal from its decision. Unless it very clearly appears to be erroneous, or an abuse of discretion, the trial court's decision on the fitness of the juror will be sustained.

14 L. Orland & K. Tegland, Wash. Prac., *Trial Practice* § 203, at 332 (4th ed. 1986).

For the very reason that reasonable minds can well differ on this issue, we defer to the judgment of the trial court in this case. The trial court was in the best position to judge

---

[5]*State v. Rupe,* 108 Wn.2d at 749; *State v. Mak,* 105 Wn.2d 692, 707, 718 P.2d 407, 418, *cert. denied,* 479 U.S. 995 (1986); *State v. Latham,* 100 Wn.2d 59, 64, 667 P.2d 56 (1983); *State v. White,* 60 Wn.2d 551, 569, 374 P.2d 942 (1962), *cert. denied,* 375 U.S. 883 (1963). *See also* RCW 4.44.190.

[6]*See, e.g., State v. Gosser,* 33 Wn. App. 428, 434, 656 P.2d 514 (1982); *Rupe,* 108 Wn.2d at 749; RCW 4.44.170(2), .190; CrR 6.4(c)(1).

whether the juror's answers merely reflected honest caution based on her lack of prior jury experience or whether they manifested a likelihood of actual bias. As Washington Practice explains,

> the trial court has, and must have, a large measure of discretion. *On appeal, the party challenging the trial court's decision on the objection must show more than a mere possibility that the juror was prejudiced.*

(Italics ours.) L. Orland & K. Tegland § 202, at 331.

Based on our careful review of the voir dire examination of this challenged juror, we conclude that at most it demonstrates a mere possibility of prejudice, and we do not perceive a manifest abuse of discretion by the trial judge.

ISSUE TWO.

CONCLUSION. The information charging the defendant was not violative of his right to be informed of the criminal charges against him.

The defendant challenges the constitutionality of the charging document (the information) on several grounds: (1) He argues that it was constitutionally deficient because it failed to state in which of the alternative statutory ways he committed sexual intercourse with his stepdaughter; (2) he argues it was defective for lack of specificity regarding the where, when and how of the crimes; and (3) he argues that the two identically worded counts of rape violated his double jeopardy rights.

An accused person must be informed of the criminal charge he or she is to meet at trial and cannot be tried for an offense not charged.[7] It is sufficient to charge in the language of a statute if the statute defines the offense with reasonable certainty.[8] The defendant argues that the

---

[7]Const. art. 1, § 22 (amend. 10); *State v. Irizarry,* 111 Wn.2d 591, 592, 763 P.2d 432 (1988).

[8]*State v. Elliott,* 114 Wn.2d 6, 13, 785 P.2d 440, *cert. denied,* __ U.S. __, 112 L. Ed. 2d 80, 111 S. Ct. 110 (1990); *State v. Leach,* 113 Wn.2d 679, 686, 782 P.2d 552 (1989).

"essential elements" rule requires that all statutory elements of a crime be contained in the charging document.[9] In the case before us, all of the statutory elements are contained in the information. The statutory rape statute under which the defendant was charged was former RCW 9A.44-.070; in relevant part, that statute reads as follows:

> A person over thirteen years of age is guilty of statutory rape in the first degree when the person engages in sexual intercourse with another person who is less than eleven years old.

Former RCW 9A.44.070(1).[10]

The defendant was charged with two counts of statutory rape in the first degree in the following language of the information:

> That the defendant Fredric Noltie, in King County, Washington, during a period of time intervening between November 29, 1983 and May 14, 1987, being over thirteen years of age, did engage in sexual intercourse with [M], a person less than eleven years old, to wit: five, six, seven, eight years of age;
> Contrary to RCW 9A.44.070, . . ..

A comparison of the language of the information with the language of the statute demonstrates that the information did charge all of the elements of the crime of statutory rape in the first degree.

The defendant argues that the information is nonetheless unconstitutional in that it fails to state which of the *alternative means* of committing statutory rape that the State intended to prove at trial. Under the sexual offenses statute, "sexual intercourse" can be committed in several alternative ways. Sexual intercourse includes: (a) its "ordinary meaning"; (b) any penetration of the vagina or anus by an object; and (c) any sexual contact involving the sex organs of one person and the mouth or anus of another. RCW 9A.44.010(1)(a)–(c).

---

[9]*See Leach,* 113 Wn.2d at 687; *State v. Holt,* 104 Wn.2d 315, 320–21, 704 P.2d 1189 (1985).

[10]RCW 9A.44.070 was repealed in 1988 and replaced by RCW 9A.44.073. Laws of 1988, ch. 145, § 2, p. 562; § 24, p. 584.

■ A recent decision of this court resolves the issue. In *State v. Elliott,* 114 Wn.2d 6, 13, 785 P.2d 440, *cert. denied,* __ U.S. __, 112 L. Ed. 2d 80, 111 S. Ct. 110 (1990), we held that in an information the prosecution need *not* elect between alternative means of committing an offense. Specifically, *Elliott* held that the State's failure to elect in the information between alternate means of committing an offense does not violate an accused's right to a unanimous jury verdict.[11] This was a logical extension of prior decisions in which we held that in alternative *means* cases, where an offense may be committed in more than one way (oral or vaginal intercourse, for example), jury unanimity is *not* required.[12] We conclude, therefore, that the failure of the information in this case to specify which of several possible means by which the accused could have engaged in sexual intercourse with the child did not violate the defendant's rights to be informed of the charges against him nor did it deprive him of jury unanimity. Since we have previously held that at trial the prosecution need not elect between alternative means of committing a crime, it would be anomalous to require such an election in a charging document.

In the present case, there was testimony from the child victim that a number of separate acts of sexual abuse occurred. We agree with the Court of Appeals decision in this case that there is no error inasmuch as the trial court instructed the jury on the unanimity requirement.

■ In this state, a defendant can only be convicted when a unanimous jury concludes that the criminal act charged in the information has been committed.[13] In *multiple acts* cases where several acts are alleged, any one of

---

[11]*Elliott,* 114 Wn.2d at 13.

[12]*State v. Kitchen,* 110 Wn.2d 403, 410, 756 P.2d 105 (1988); *State v. Whitney,* 108 Wn.2d 506, 739 P.2d 1150 (1987).

[13]*State v. Petrich,* 101 Wn.2d 566, 569, 683 P.2d 173 (1984); *Kitchen,* 110 Wn.2d at 409.

which could constitute the crime charged, the jury must be unanimous as to which act or incident constitutes the crime.[14] In such cases, Washington law requires that *either* the State elect the act upon which it will rely for conviction, or that the trial court instruct the jury that all jurors must agree that the same underlying criminal act has been proven beyond a reasonable doubt.[15]

The trial court here instructed the jury as follows:

> Evidence has been introduced of alleged multiple acts of sexual intercourse between [M] and the defendant.
> Although the twelve of you need not agree that all of the acts have been proved, to convict the defendant of Count I or Count II you must unanimously agree that at least one separate act of sexual intercourse pertaining to each count has been proved beyond a reasonable doubt.

Instruction 11. This unanimity instruction complies with the mandate of *State v. Petrich,* 101 Wn.2d 566, 683 P.2d 173 (1984) and *State v. Kitchen,* 110 Wn.2d 403, 756 P.2d 105 (1988). The defendant's right to a unanimous jury verdict was not violated.

The defendant next argues that the information was defective for lack of specificity because it did not state the "when, where or how" of the charged crime. Washington courts have repeatedly distinguished informations which are constitutionally deficient and those which are merely vague.[16] If an information states each statutory element of a crime but is vague as to some other matter significant to the defense, a bill of particulars can correct the defect.[17] In that event, a defendant is not entitled to challenge the

---

[14]*Kitchen,* 110 Wn.2d at 411.

[15]*Kitchen,* 110 Wn.2d at 411; *Petrich,* 101 Wn.2d at 572.

[16]*State v. Holt,* 104 Wn.2d at 320; *Leach,* 113 Wn.2d at 687; *State v. Bonds,* 98 Wn.2d 1, 17, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983); *State v. Thomas,* 73 Wn.2d 729, 731, 440 P.2d 488 (1968); *State v. Hawthorne,* 48 Wn. App. 23, 28, 737 P.2d 717 (1987).

[17]*State v. Bergeron,* 105 Wn.2d 1, 18, 711 P.2d 1000 (1985).

information on appeal if he or she has failed to timely request a bill of particulars.[18]

In the present case, the defendant's first trial counsel requested a bill of particulars; it was opposed by the State on the basis that a defense interview of the victim was scheduled. The State argued that the interview would provide the defense with full disclosure of the details and time periods of the allegations of continuing sexual abuse. The court thereupon deferred its ruling until after the interview, and the motion was never renewed by the defense. Appellate counsel for the defendant argues that defendant's original trial counsel, who sought the bill of particulars, withdrew and substitute counsel did not renew the motion because he believed the motion had been denied. The record, however, does *not* support this factual argument; the record *does* show that the trial court *deferred* ruling on the motion. Since the defense abandoned its motion after the interview with the victim, presumably sufficient particulars of the alleged crimes were discovered in that manner.

In another context this court has pointed out that after a trial court has refused to rule, or has made a tentative ruling on a matter, the party is obligated to again raise the issue at an appropriate time to insure that a record of the ruling is made for appellate purposes.[19] We conclude that the defendant is foreclosed from arguing the vagueness of the information on appeal because of his failure to pursue his motion for a bill of particulars at trial.

Furthermore, requiring a bill of particulars is discretionary with the trial court and its ruling will not be disturbed absent a showing of abuse of discretion.[20] In the present case, the defendant would have to show that the

---

[18]*Holt,* 104 Wn.2d at 320; *Leach,* 113 Wn.2d at 687; *Bonds,* 98 Wn.2d at 17.

[19]*State v. Koloske,* 100 Wn.2d 889, 896, 676 P.2d 456 (1984), *overruled on other grounds in State v. Brown,* 111 Wn.2d 124, 761 P.2d 588 (1988).

[20]*State v. Devine,* 84 Wn.2d 467, 471, 527 P.2d 72 (1974); *State v. Brown,* 45 Wn. App. 571, 578, 726 P.2d 60 (1986).

trial court's deferral of its ruling on the motion was an abuse of discretion in order to merit reversal of the conviction. The function of such a bill is to amplify or clarify particular matters considered essential to the defense.[21] It is not at all clear just what essential facts were allegedly unknown. Defendant's defense was a categorical denial of any wrongdoing over the entire period of time that he lived with M and M's mother. He does not argue that he was surprised by the State's evidence or that he lacked notice of what the State intended to prove.

> The test in passing on a motion for a bill of particulars should be whether it is necessary that defendant have the particulars sought in order to prepare his defense and in order that prejudicial surprise will be avoided. A defendant should be given enough information about the offense charged so that he may, by the use of diligence, prepare adequately for the trial. If the needed information is in the indictment or information, then no bill of particulars is required. The same result is reached if the government has provided the information called for in some other satisfactory form.

(Footnotes omitted.) 1 C. Wright, *Federal Practice* § 129, at 436–37 (2d ed. 1982).

Based on the record before us, it appears that defense counsel's interview of the child victim was an adequate way to provide the defense with the particulars of the allegations. This is particularly true since the allegations of sexual abuse spanned a 3–year period and presented a pattern of frequent and escalating abuse. Nothing in the record indicates what information, beyond that provided to the defense, could have been furnished to give additional notice of the charges. Since it does not appear that the defendant was unfairly surprised at trial, nor that he lacked notice of the specifics of the allegations, the trial court did not abuse its discretion by deferring a ruling on the motion for a bill of particulars pending witness interviews.

Finally, the defendant argues that the charging of the two counts of statutory rape in the first degree violated his double jeopardy rights because identical language was used

---

[21]*State v. Holt*, 104 Wn.2d 315, 321, 704 P.2d 1189 (1985).

in each count and that the "same evidence" was presented to support both counts.

That is not a strictly accurate portrayal of the evidence presented by the child victim at trial. She actually testified to two kinds of sexual intercourse (vaginal and oral) and recalled, in detail, the facts surrounding one occurrence of each. She also testified that there was more than one occurrence of each of these kinds of sexual intercourse.

At trial, defense counsel moved to dismiss count 1 or count 2 on the basis that they were duplicitous. The trial court denied the motion on the basis that the evidence had shown more than one rape. The judge stated that the testimony as to oral intercourse constituted one act of sexual intercourse and the testimony as to vaginal intercourse constituted a separate act of sexual intercourse. Defense counsel then moved to force the State to elect which specific acts formed the basis of counts 1 and 2. The trial court denied the motion reasoning that the State need not so elect and that the jury would be instructed that separate and distinct acts of rape were required to support each count. The trial court did so instruct in instruction 11, quoted above. The trial court's ruling was correct in light of the rule that the State need not elect between various means of committing a crime so long as substantial evidence supports each alternative means.[22] Nor must the State elect the specific act so long as a unanimity instruction is given to the jury, as it was in this case.[23] Because the State was not required to elect means or specific acts, the trial judge did not err in advising the jury to reread the instructions when it asked whether count 1 referred only to vaginal intercourse and count 2 only to oral. The child's testimony provided substantial evidence to support a jury conclusion of either oral or vaginal intercourse, or both.

[22]*See, e.g., Petrich,* 101 Wn.2d at 569; *State v. Kitchen,* 110 Wn.2d 403, 410, 756 P.2d 105 (1988).

[23]*Kitchen,* 110 Wn.2d at 411.

The trial court's decision in this regard is also congruent with CrR 2.1(b), which provides in part that

the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. . . . It may be alleged that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.

■ We conclude that the defendant's argument that the charging document was "duplicitous" is without merit. "Duplicity" is the joining in a single count of two or more distinct and separate offenses and "multiplicity" is the charging of a single offense in several counts.[24]

In the case before us, the information, instructions and argument make it clear that the State charged the defendant with two separate and distinct counts of statutory rape. This court in *Petrich,* after holding that a unanimity instruction is required if the prosecutor chooses not to elect which *acts* constitute the crime charged, stated:

Multiple instances of criminal conduct with the same child victim is a frequent, if not the usual, pattern. . . . Whether the incidents are to be charged separately or brought as one charge is a decision within prosecutorial discretion. Many factors are weighed in making that decision, including the victim's ability to testify to specific times and places. Our decision in this case is not intended to hamper that discretion or encourage the bringing of multiple charges when, in the prosecutor's judgment, they are not warranted. The criteria used to determine that only a single charge should be brought, may indicate that the election of one particular act for conviction is impractical. In such circumstances, defendant's right to a unanimous verdict will be protected with proper jury instructions.

*State v. Petrich,* 101 Wn.2d 566, 572–73, 683 P.2d 173 (1984).

In this case, M was able to testify to specific times and places for two separate incidences of statutory rape, one oral and one vaginal, in addition to her testimony of ongoing sexual intercourse and sexual abuse. Under *Petrich,* it

---

[24]1 C. Wright, *Federal Practice* § 142, at 469 (2d ed. 1982); 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.2, at 457 (1984).

was within the prosecutor's discretion to charge two separate counts of statutory rape. Different evidence was introduced to support each count and jury unanimity was required by the trial court's instructions. The jury's conviction on only one of the two statutory rape counts indicates that it understood the separateness of the charges.

The defendant further argues that the information violated his constitutional guaranty against double jeopardy because he was twice placed in jeopardy for the same offense at the same time. The constitutional guaranty against double jeopardy protects a defendant from a second trial for the same offense and against multiple punishments for the same offense.[25] In order to violate federal and state double jeopardy standards, there must be multiple punishments for the "same offense".[26]

The double jeopardy clause does not prohibit the imposition of separate punishments for different offenses.[27] If one crime is over before another charged crime is committed, and different evidence is used to prove the second crime, then the two crimes are not the "same offense" and a perpetrator may be punished separately for each crime without violating a defendant's double jeopardy rights.[28] For it to be the "same offense" for double jeopardy purposes, the offenses must be the same in law and in fact.[29]

In the present case, it was clear from the information, instructions, testimony and jury argument that the State was charging the defendant with two different instances of statutory rape and was not seeking to impose multiple punishments for the same offense. In reviewing allegations

---

[25]*State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983).

[26]U.S. Const. amend. 5; Const. art. 1, § 9.

[27]*In re Fletcher*, 113 Wn.2d 42, 47, 776 P.2d 114 (1989).

[28]*Fletcher*, 113 Wn.2d at 49.

[29]*Fletcher*, 113 Wn.2d at 47 (citing *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983)).

of double jeopardy, an appellate court may review the entire record to establish what was before the court.[30]

The trial court gave separate "to convict" instructions relating to counts 1 and 2; in the second such instruction, it stated:

> To convict the defendant Fredric Noltie of the crime of statutory rape in the first degree, as charged in count II, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That during a period of time intervening between November 29, 1983 and May 14, 1987, the defendant engaged in sexual intercourse with [M] *in an incident separate from and in addition to any incident that may have been proved in count I;*

(Italics ours.) Instruction 10 (part). Instruction 11 concluded in the same vein, "to convict the defendant of Count I or Count II you must unanimously agree that at least one separate act of sexual intercourse pertaining to each count has been proved beyond a reasonable doubt."

The deputy prosecutor's expressed position throughout the trial was to the effect that the State was charging two kinds of sexual intercourse during the period that defendant lived with M and her mother. For example, during closing argument the deputy prosecutor stated: "Before I move on to the next offense [indecent liberties] I want to point out that there are two of these [to convict] instructions, because there are two counts of statutory rape charges. The bare bones elements are the same in each. But as one of these instructions says, far better than I can say now, you have to find he did it twice in order to convict him of the second one. Okay? Pretty easy."

We conclude that the defendant was tried for the commission of two separate crimes of statutory rape and was not charged twice for the same offense. He was not placed in jeopardy twice for the same offense at the same time. By

---

[30] 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.2, at 446 (1984); 1 C. Wright, *Federal Practice* § 125, at 365 (2d ed. 1982).

so ruling, however, we do not mean to commend the practice of using identically worded counts in the same information.

ISSUE THREE.

CONCLUSION. The trial court did not err by allowing expert witnesses to utilize colposcopic photographs to illustrate their trial testimony regarding sexual abuse.

After M had been examined by a pediatrician, she was referred to Harborview Hospital where a colposcopic examination was performed by Dr. Carol Jenny. The trial court denied a motion in limine to exclude evidence obtained or derived from colposcopic examination. The Court of Appeals upheld the trial court's ruling denying the motion to exclude; we agree.

Dr. David Miller testified for the defense that the colposcopic photographs showed no evidence of sexual abuse. Dr. Jenny disagreed and utilized the photographs to illustrate her opinion that M's hymenal opening was abnormally large and consistent with sexual abuse.

The defendant argues that colposcopy constitutes a new diagnostic technique which is not established as well accepted in the scientific community and is only admissible if it meets the *Frye* test. *Frye v. United States,* 293 F. 1013, 34 A.L.R. 145 (D.C. Cir. 1923). At trial, all of the experts agreed that the colposcope was an instrument used to magnify and take photographs. Dr. Richard Joslin, a defense witness, agreed with counsel that a colposcopic examination essentially involves no more than a magnification making it easier to see defects that may exist and which might be more difficult to see with the naked eye. Dr. Jenny described colposcopy as a microscopic examination developed to assist in diagnosing cancer and which magnifies images 20 times to make a realistic reproduction, and that it is also a useful technique in examining children for signs of sexual abuse. The defense expert, Dr. David Miller, described a colposcope as follows:

A [colposcope] literally translated means a scope for examining the neck, culdos. It is an instrument which we use in

obstetrics and gynecology. It has approximately fifteen and thirty times magnification. It is a binocular instrument, which gives one an in-depth view.

The Court of Appeals held that the instrument was in general use in the medical community and was no more a novel device or scientific process subject to the *Frye* standard than binoculars or a weak microscope would be, and concluded that the experts agreed that a colposcope was little more than a magnifying glass with a fancy name.[31] We agree.

A recent California decision notes that the colposcope has been used in Europe and in this country since the 1960's. *People v. Pitts,* __ Cal. App. 3d __, 273 Cal. Rptr. 757 (1990). The *Pitts* court observed that the colposcope is basically an instrument which allows a doctor to magnify and photograph an area of a child's body; it concluded that a colposcopic examination is not a new scientific technique subject to the *Frye* test.[32] In *Commonwealth v. Smith,* 389 Pa. Super. 626, 567 A.2d 1080 (1989), it was also noted that the colposcope is simply an instrument that provides low power magnification, akin to binoculars to aid in detecting subtle signs of genital injury. Several other courts have reached the same result as our Court of Appeals did in the present case, that colposcopy is *not* a novel scientific technique subject to the *Frye* test.[33] More recently our Court of Appeals has again upheld the admissibility of colposcopic photographs as probative in a statutory rape trial.[34]

---

[31]*State v. Noltie,* 57 Wn. App. 21, 29-30, 786 P.2d 332 (1990) (citing *Onwan v. Commonwealth,* 728 S.W.2d 536, 537 (Ky. Ct. App. 1987)).

[32]*People v. Pitts,* __ Cal. App. 3d __, 273 Cal. Rptr. 757 (1990).

[33]*People v. Luna,* 204 Cal. App. 3d 726, 250 Cal. Rptr. 878 (1988); *Onwan v. Commonwealth,* 728 S.W.2d 536 (Ky. Ct. App. 1987); *People v. Mendibles,* 199 Cal. App. 3d 1277, 245 Cal. Rptr. 553 (1988).

[34]*State v. Stevens,* 58 Wn. App. 478, 492-93, 794 P.2d 38, *review denied,* 115 Wn.2d 1025 (1990).

 The defendant also argues the colposcopic photographs were gruesome and should have been excluded under ER 403 because the probative value was substantially outweighed by the danger of unfair prejudice. This argument is not substantiated by the record; in fact the defendant's medical expert testified that the photos showed normal anatomy with no evidence of sexual abuse. Additionally, the admissibility of photographs is generally within the discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion.[35] Here the photos were relevant to the issue of physical evidence of sexual abuse. Accurate photos are admissible if their probative value outweighs any prejudicial effect.[36] Here, the photos were highly relevant, and no prejudice has been demonstrated. The trial court did not abuse its discretion in admitting the colposcopic photographs.

Affirmed.

DORE, C.J., UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, and GUY, JJ., and CALLOW, J. Pro Tem., concur.

Reconsideration denied June 21, 1991.

---

[35]*State v. Crenshaw*, 98 Wn.2d 789, 806, 659 P.2d 488 (1983).

[36]*Crenshaw*, 98 Wn.2d at 806.