# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| In the Matter of the Personal Restraint of | No. 53517-3-II |
|---|---|
| SHANNE MCKITTRICK, | UNPUBLISHED OPINION |
| Petitioner. | |

CRUSER, J. – Shanne McKittrick seeks relief from personal restraint imposed as a result of his 2015 conviction for second degree murder.[1] The facts of his crime are described in the opinion affirming his conviction. *State v. McKittrick*, No. 47929-0-II, (Wash. Ct. App. Oct. 25, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/D 2%2047929-0-II%20Unpublished%20Opinion.pdf. In this petition, he argues that juror 30 was biased against him, that his appellate counsel provided ineffective assistance of counsel is not raising this issue in his direct appeal, and that the trial court abused its discretion in denying his motion to remove juror 30 for cause.

In the juror questionnaire, juror 30 answered yes to the following question:

> Do you believe the fact that Derek Wagoner, Shanne McKittrick, Eric Elliser, Mike Stredicke, and many of the state's witnesses are alleged to be skinheads will affect your ability to be a fair and impartial juror?

---

[1] We issued the mandate of McKittrick's direct appeal on May 17, 2018, making his May 17, 2019 petition timely filed. RCW 10.73.090(3)(b).

Resp. to Pet., App. at 461. Asked to explain that answer, juror 30 stated "[b]ased on things I've read in the news about the activities of skinheads, I would have a hard time trusting what they say." *Id.*

During voir dire, the State inquired of juror 30 as follows:

Q I'll skip ahead then to the questions in the questionnaire that talk about skinheads. Do you remember answering those questions?
A Yes.
Q One of the questions you were asked is whether or not if you knew that participants in this trial were skinheads, might that affect your ability to be fair, and you indicated yes?
A Um-hmm.
Q Would you expand on that a little bit?
A I think it would -- I have personal opinions about skinheads that might be in the back of my mind. At the same time, I think that I would be able to listen to facts. I could probably do things, I would be impartial, but there would be part of me that might not be, but I think I could evaluate what happened.
Q Do you think that you would describe yourself as objective?
A Yes.
Q And fair?
A Um-hmm.
Q You indicated, based on things I've read in the news about the activities of skinheads, I would have a hard time trusting what they say. What types of things have you read?
A Not a whole lot, but just I think a few years ago there was something that happened in Idaho. I have read about certain situations.
Q You were asked to describe what you think of when you hear a person is a skinhead. You said, a person is a racist, possibly aggressive, violent.
A Based on the --
Q The Idaho?
A Yeah.
Q Okay. Now, the opinions that you have, if you were picked to be on this jury, you would hear evidence in the nature of testimony and exhibits, would you be able to set aside your opinions that you might have on these individuals and render a verdict or decision based solely on the evidence presented at trial?
A Yes.
Q Is that something you feel confident that you could promise this court and both sides that you would be able to do?
A Yes, I could be.

No. 53517-3-II

Verbatim Report of Proceedings (VRP) (Mar. 5, 2015) at 47-49, *State v. McKittrick*, No.

47929-0-II (Wash. Ct. App.).

McKittrick's counsel then inquired of juror 30 as follows:

Q Let me ask you the question counsel just asked you, referring to your answer based on things you read in the news, you gave that answer in response to the question about do you think your knowledge that the witnesses or defendants were alleged to be skinheads would affect your ability to be a fair, impartial juror, and you said yes to that?
A Yeah.
Q Why did you say yes?
A I think -- because it was mostly no, but there's a part of me that thought that maybe it was possible. But I think overall that I could be impartial.
Q You said that a person who is a skinhead is a racist, possibly aggressive and violent, why?
A Just based on things that I've read. I don't spend a lot of time reading about it.
Q I understand you don't spend a lot of time reading, but have you read anything good about skinheads?
A No.
Q And so this is kind of an opinion you have about all skinheads in general, is that correct, a gut reaction?
A When asked to define --
Q A skinhead?
A Yes.
Q That's how you would define them?
A Yes.
Q I guess my question becomes is that kind of the way you respond to anyone who is identified as a skinhead?
A Like if they introduced --
Q If somebody said, that person's a skinhead, your response, would you think about that person, oh, nice guy, nice gal, or would you think probably a racist and violent?
A I would probably think a racist, yes.
Q And possibly violent, right?
A Yes.
Q Then would the burden then be on them to prove to you that they weren't? Would you just automatically change that opinion or would you expect them to be able to prove to you otherwise?
A It might take a little time, yes. I think they would need to prove to me.
Q You would expect them to prove to you otherwise?
A Yes.
. . . .

3

Q . . . Assuming you have this preconceived notion and you would expect them to basically prove it wrong, the judge is going to tell you you've got to come at this case with a blank slate, I'm putting all my preconceived notions aside, how would you do that?

A I would look at the facts of the case and evaluate what has been presented. And I think I would be able to look at them and make a decision based on what happened.

Q But if you're told you have to evaluate the evidence, right?

A Yes.

Q Wouldn't you evaluate the evidence through your beliefs about certain people or certain things? In other words, could you put those preconceived notions aside when you're actually evaluating the evidence?

A I think I could put them aside.

Q How?

. . . .

A Okay. I think I would be able to just look at the facts of the case and be able to evaluate based on that whether or not -- whether or not -- or make my decision based on that. I don't I think I would be able to just set aside whatever preconceived notions that I have not keeping my personal beliefs.

Q Would you expect the defense to prove to you that they weren't racists or that they weren't violent?

A Not -- like, if the situation was -- like, if the situation -- I would need evidence of what happened.

Q But when you're evaluating the evidence, okay, and you've already indicated you have this preconceived notion of skinheads --

A Um-hmm.

Q -- would you expect the defendants to present evidence to help you put aside those preconceived notions? In other words, would you expect the defendants to put forward evidence that they weren't violent, for example?

A Maybe, but I don't think so. I think I could look at just the case.

*Id.* at 50-53.

Counsel for one of McKittrick's co-defendants then inquired of juror 30 as follows:

Q But you will hear a number of witnesses, some will be called by the State, some will be called by the defense, we'll be talking about them equally. Some of them on both sides could be skinheads and identified to you as that.

A Yes.

Q So are you going to be viewing them through a different lens of trust than other witnesses, other people that would be testifying, like a police officer or firefighter or a neighbor?

4

A It is possible, yes.

Q And if it's possible, would that be through -- everybody views a lens. Like I'm sure you view your family in a much more positive light than you would like me because you don't know me from Adam. Are you cutting them a break in a positive way or negative way regarding skinheads?

A Like once they have testified?

Q Well, you view them through the lens of some sort of bias or preconceived notion, right?

A Yes.

Q So like, for example, if your uncle, Supreme Court Judge was up here, you've got a different lens. If he said something, you would view it differently than if I said something versus somebody else. Do you understand?

A Yes.

Q So what I'm trying to find out is the lens in which you are viewing the people who are identified to you as skinheads, is that a positive light or a negative light?

A It would be probably a negative.

Q Is that something that you can set aside?

A Yes, I think I can set it aside.

*Id.* at 56-57.

McKittrick's counsel then challenged juror 30 for cause, which the trial court denied.

First, McKittrick argues that juror 30 was biased against him because he was a skinhead. As the party claiming actual juror bias, he has the burden of putting forth sufficient facts to prove his claim of bias by a preponderance of the evidence. *State v. Wilson*, 141 Wn. App. 597, 606, 171 P.3d 501 (2007). His "proof must indicate that the challenged juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." *Brady v. Fibreboard Co.*, 71 Wn. App. 280, 283, 857 P.2d 1094 (1993). McKittrick does not meet this burden of proof. While juror 30 stated that she had preconceived notions about the violent tendencies of skinheads, she stated that she could set them aside and decide the case solely on the evidence presented at trial. Thus,

5

McKittrick does not show that juror 30 was actually biased against him. *State v. Noltie*, 116 Wn.2d 831, 839, 809 P.2d 190 (1991).

Second, McKittrick argues that he received ineffective of appellate counsel when she did not raise the issues pertaining to juror 30 in his direct appeal. To establish ineffective assistance of counsel, McKittrick must show that his appellate counsel's choice of what legal issues to raise fell below an objective standard of reasonableness and that as a result of that deficient performance, the result of his case probably would have been different. *State v. McFarland*, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In the context of a personal restraint petition asserting ineffective assistance of appellate counsel, McKittrick must demonstrate that the legal issue not raised in his direct appeal had merit and that he was substantially prejudiced by his counsel's failure to raise it. *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 777-78, 100 P.3d 279 (2004). McKittrick shows neither merit nor prejudice. Thus, he does not show ineffective assistance of appellate counsel.

Finally, McKittrick argues that the trial court abused its discretion when it denied his challenge to juror 30 for cause. We defer to the trial court regarding decisions on challenges to jurors for cause. *Noltie*, 116 Wn.2d at 839; *State v. Lawler*, 194 Wn. App. 275, 282, 374 P.3d 278 (2016). We review such decisions for manifest abuse of discretion. *State v. Davis*, 175 Wn.2d 287, 312, 290 P.3d 43 (2012), *abrogated in part on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018). Given the extensive questioning of juror 30, McKittrick does not demonstrate manifest abuse of discretion in the trial court's denial of the challenge to her for cause.

McKittrick does not show that he entitled to relief from restraint. We deny McKittrick's petition and his request for appointment of counsel.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

SUTTON, A.C.J.

GLASGOW, J.