IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81224-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| GIRAULT, FREDERICO, | ) | |
| DOB: 07/30/2000, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Frederico Girault appeals his jury conviction for third degree rape. He claims the trial court improperly admitted details of his two prior rape convictions as evidence of a common scheme or plan. He also argues the court erred in denying a for-cause challenge, which led to the seating of a biased juror. Because Girault's jury panel included a biased juror, we reverse and remand.

FACTS

The State charged Girault with third degree rape after his high school classmate J.T. reported to her volleyball coach that he sexually assaulted her. Pretrial, the State moved to admit Girault's two prior convictions for third degree rape of O.E. and M.Y. as evidence of a common scheme or plan under ER 404(b). The court scheduled a hearing and heard testimony from each teenager about the sexual assaults.

Citations and pin cites are based on the Westlaw online version of the cited material.

O.E. testified that she and Girault connected through social media when she was in 8th or 9th grade but had never met in person. They stopped communicating for a time while O.E. was dating someone else but reconnected about a year later and decided to "hang out" one night. O.E. told Girault "multiple times" that she was not interested in having sex.

The two spent about two and a half hours together at her house in November 2016, during which Girault tried several times to have sexual contact with O.E. O.E.'s teenage brother was home but went to sleep while Girault was still there. So O.E. told Girault her mother was coming back and he needed to leave. As they stood up and hugged, Girault turned O.E. so that her back was facing him. Girault pushed O.E. forward, bending her over the couch. He then lowered her leggings and underwear and his pants, restrained her by keeping one hand on her back and the other on her hip, and raped her. O.E. told Girault to "stop" but he refused, telling O.E., "[D]on't worry, you will like it." After he raped O.E., Girault apologized and told her he "wasn't in control." O.E. testified that Girault did not use a condom.

M.Y. testified that she met Girault at school when she was in the 9th grade. They had a casual friendship in the 10th grade until she refused Girault's requests to date. The two connected again in November 2017 during the next school year and M.Y. accepted an invitation to stay the night at Girault's house so long as her friend could stay, too.

At Girault's house, M.Y. was lying on the edge of his bed looking at her cell phone, waiting for her friend's text letting her know she was there. Girault's

male friend was "wrapped in a blanket" and sitting on the opposite corner of the bed, "on his phone[,] facing . . . the wall." Girault climbed onto the bed and made sexual advances toward M.Y. M.Y. resisted and managed to persuade Girault that she needed to use the bathroom. When M.Y. tried to leave the bathroom, Girault pushed her back inside and shut the door behind him. Girault turned off the lights and grabbed M.Y.'s neck and wrists while she struggled against him. Girault then turned M.Y. so she was facing away from him, pulled down her leggings and underwear, pushed her forward until she was slightly bent over but still standing, pulled down his own pants, and raped her. M.Y. told Girault to "stop" and "tried every excuse she could think of," including bringing up Girault's girlfriend, but he told her it "didn't matter" and to "shut up." After the rape, Girault apologized. M.Y. testified that Girault did not use a condom.

J.T. testified that she and Girault attended the same high school during her 10th-grade year but had never met in person until Girault "liked" her photographs on Instagram and the two exchanged messages through social media. "Based on what people told [her] at school," J.T. told Girault during their initial conversations that she "just wanted to be friends."

On October 9, 2018, J.T. stayed after school to play in a volleyball game. Girault approached J.T. in the hallway and told her he "needed to talk" with her "in private." Girault told J.T. he would meet her upstairs. In an empty and secluded hallway at the top of the stairs on the third floor, Girault made sexual advances toward J.T. J.T. told Girault she "didn't want to" but he told her "it was going to be okay." J.T. repeated that she "didn't want to" and tried to step back

3

but Girault, who was standing in a corner, held her by her wrist. Girault then turned J.T. around so her back was to him and pulled down her sweat pants and underwear with one hand while his other hand held her wrists behind her back. Girault pressed on J.T.'s back to bend her forward but she resisted and remained upright. Girault then pulled down his pants and raped J.T. while he held her wrists with one hand and her neck with the other. Afterward, J.T. was crying and Girault asked her "what was wrong." He "didn't seem to understand why [she] w[as] upset." J.T. testified that Girault did not use a condom.

In a written ruling, the trial court determined all three incidents involved sufficiently similar facts to admit them as evidence of a common scheme or plan.

During jury selection, Girault challenged "Juror 23" for cause after she said she would "have a hard time" presuming Girault innocent if she heard evidence that he had prior rape convictions. The trial court denied the defense motion without comment. Girault used all but one of his peremptory challenges but did not excuse Juror 23. The court empaneled Juror 23 and she deliberated. The jury convicted Girault as charged.

Girault appeals.

ANALYSIS

Common Scheme or Plan

Girault argues that the trial court erred in admitting details of his two prior rape convictions under the common scheme or plan exception in ER 404(b). According to Girault, the evidence supporting the rapes of O.E. and M.Y. was not substantially similar to the evidence supporting the rape of J.T. We disagree.

4

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. State v. Scherner, 153 Wn. App. 621, 656, 225 P.3d 248 (2009), aff'd sub nom., State v. Gresham, 173 Wn.2d 405, 269 P.3d 207 (2012). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. Scherner, 153 Wn. App. at 656.

Though courts presume that prior bad acts are inadmissible under ER 404(b), such evidence is properly admitted to prove a common scheme or plan if the prior acts are (1) proved by a preponderance of the evidence, (2) admitted to show a common plan or scheme, (3) relevant to prove an element of the crime charged or to rebut a defense, and (4) more probative than prejudicial. State v. Lough, 125 Wn.2d 847, 852-53, 889 P.2d 487 (1995). The party seeking to admit evidence of prior bad acts bears the burden to show it meets the elements for admissibility under ER 404(b). State v. Slocum, 183 Wn. App. 438, 448, 333 P.3d 541 (2014) (citing State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003)).

> There are two categories of common scheme or plan evidence:
>
> (1) "[W]here several crimes constitute constituent parts of a plan in which each crime is but a piece of the larger plan" and (2) where "an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes."

Gresham, 173 Wn.2d at 421-22 (quoting Lough, 125 Wn.2d at 854-55). To introduce evidence of the second type of common scheme or plan, the prior misconduct and the charged crime "must demonstrate 'such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which' the two are simply 'individual manifestations.' "

5

Gresham, 173 Wn.2d at 422 (quoting Lough, 125 Wn.2d at 860). Mere similarity in results is insufficient. Gresham, 173 Wn.2d at 422. Still, "while the prior act and charged crime must be markedly and substantially similar, the commonality need not be 'a unique method of committing the crime.' " Gresham, 173 Wn.2d at 422 (quoting DeVincentis, 150 Wn.2d at 20-21).

Evidence that a defendant committed a charged crime in a manner devised and used by him more than once has a distinct probative value that justifies its admission. Slocum, 183 Wn. App. at 456. That is, when a defendant implemented his past crimes in a manner markedly similar to the charged crime, the prior crimes are admissible to show a common scheme or plan. Gresham, 173 Wn.2d at 422-23; see also State v. Carleton, 82 Wn. App. 680, 684, 919 P.2d 128 (1996) (when a defendant devises a particular manner of committing a crime followed by "repetition of the device in similar contexts," his prior bad acts are probative of a common scheme or plan).

Here, Girault committed all three rapes in a "markedly similar" fashion. See Gresham, 173 Wn.2d at 422-23. The record shows Girault developed social relationships with each of the victims. All the victims were 16 years old[1] and Girault was bigger and stronger. Each victim told Girault she was not interested in a sexual relationship with him, so he would contact her in a social environment and wait until he could isolate her before the assault. Once isolated, Girault restrained each victim and turned her back to him. He then sexually assaulted them from behind and did not use a condom. The victims all told Girault to "stop"

---

[1] J.T. was one month shy of her 16th birthday.

and they "didn't' want to." Girault tried to placate each victim by claiming she would "enjoy it" and assuring her that "it was going to be okay" or apologizing after the rape.

The trial court did not abuse its discretion by admitting evidence of Girault's two prior rape convictions to show a common scheme or plan.

Juror Bias

Girault argues the trial court erred in denying his for-cause challenge to Juror 23, which led to the seating of a biased juror. The State contends Girault waived his challenge to the trial court's ruling on appeal because he did not use all of his peremptory challenges at trial. We agree with Girault.

A.  Waiver

We recently resolved this question in State v. Peña Salvador, 17 Wn. App. 2d 769, 783, 487 P.3d 923 (2021). There, after an unsuccessful for-cause challenge, the defendant chose not to remove the challenged juror with a peremptory strike. Peña Salvador, 17 Wn. App. 2d at 776. The court seated the juror and the defendant accepted the panel with at least one peremptory challenge unused. Peña Salvador, 17 Wn. App. 2d at 776.

The State argued the defendant waived any appeal of the trial court's for-cause ruling because he had a chance to remove the challenged juror with a peremptory challenge and chose not to. Peña Salvador, 17 Wn. App. 2d at 776. We rejected the argument, noting there is no meaningful distinction between exhausting peremptory challenges on other jurors and leaving peremptory

7

challenges unused.  Peña Salvador, 17 Wn. App. 2d at 783.[2]  Instead, we

applied the rule set forth by the United States Supreme Court in United States v.

Martinez-Salazar, 528 U.S. 304, 120 S. Ct. 774, 145 L. Ed. 2d 792 (2000).

In Martinez-Salazar, the defendant used a peremptory challenge to

remove a juror that he had unsuccessfully challenged for cause.  528 U.S. at

309.  On appeal, he argued that due process compelled a new trial because the

trial court's erroneous ruling forced him to expend a peremptory strike on the

biased juror.  Martinez-Salazar, 528 U.S. at 309-10.  The Supreme Court

concluded the defendant was not "forced" but "cho[s]e" to utilize his peremptory

challenge to prevent a biased juror from serving on the panel.  Martinez-Salazar,

528 U.S. at 310-11, 315.  It rejected the government's contention that to preserve

a claim of error, a defendant needs to use a peremptory challenge to strike a

juror whom the trial court should have removed for cause.  Martinez-Salazar, 528

U.S. at 314-15.

The State relies on State v. Clark, 143 Wn.2d 731, 24 P.3d 1006 (2001),

to argue that a defendant who accepts a jury panel without exercising all

peremptory challenges cannot complain about that panel on appeal.  But Clark is

inapposite.  In that case, no juror sitting on the panel was the subject of a for-

cause challenge.  Clark, 143 Wn.2d at 763-64.  Instead, Clark "tactically withheld

his last peremptory challenge because . . . [he] knew he would get a putatively

more adverse juror," one he had unsuccessfully challenged for cause, if he

---

[2] We reached the same conclusion in State v. Taylor, ___ Wn. App. 2d ___, 490 P.3d 263, 269 (2021), where the defendant used all of his peremptory challenges on other jurors but did not remove the juror who he unsuccessfully challenged for cause.

removed anyone.  Clark, 143 Wn.2d at 759-60.  Our Supreme Court concluded that withholding a peremptory strike to prevent seating a biased juror did not prejudice the defendant.  Clark, 143 Wn.2d at 762.

Girault did not waive his right to appeal the trial court's denial of his for-cause challenge to Juror 23.

### B.  Challenge For Cause

Girault argues the trial court abused its discretion in denying his for-cause challenge to Juror 23.  The State makes no substantive argument in response.

We review a trial court's decision to deny a for-cause challenge for manifest abuse of discretion.  State v. Gonzales, 111 Wn. App. 276, 278, 45 P.3d 205 (2002).  But the trial court's broad discretion is " 'subject to essential demands of fairness.' "  State v. Guevara Diaz, 11 Wn. App. 2d 843, 856, 456 P.3d 869, review denied, 195 Wn.2d 1025, 466 P.3d 772 (2020)[3] (quoting Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001)).

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution both guarantee a criminal defendant the right to trial by an impartial jury.[4]  To protect this right, a party may challenge for cause a juror who shows actual bias.  Guevara Diaz, 11 Wn. App. 2d at 854-55.  "[A]ctual bias" occurs when a juror's state of mind is such that she "cannot try the issue impartially and without prejudice to the substantial rights of the party challenging."  RCW 4.44.170(2).

---

[3] Internal quotation marks omitted.

[4] The Washington State Constitution protects the right to an impartial jury to the same degree as the parallel federal constitutional right.  State v. Munzanreder, 199 Wn. App. 162, 174, 398 P.3d 1160 (2017).

The court must excuse a juror for cause if the juror's views would " 'prevent or substantially impair the performance of [her] duties as a juror in accordance with [her] instructions and [her] oath.' " State v. Hughes, 106 Wn.2d 176, 181, 721 P.2d 902 (1986) (quoting Wainwright v. Witt, 469 U.S. 412, 424, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985)). The question for the trial court is "whether a juror with preconceived ideas can set them aside." State v. Noltie, 116 Wn.2d 831, 839, 809 P.2d 190 (1991).

Equivocal answers or statements by a juror do not show actual bias. State v. Lawler, 194 Wn. App. 275, 283, 374 P.3d 278 (2016). And when a juror expresses reservations but agrees she can set those aside to be fair and impartial, it is within the trial court's discretion to allow that juror to remain. State v. Phillips, 6 Wn. App. 2d 651, 666, 431 P.3d 1056 (2018). But if the court has only a statement of partiality without a subsequent assurance of impartiality, the court should presume juror bias. Guevara Diaz, 11 Wn. App. 2d at 855. If a biased juror deliberates, the error requires a new trial without a showing of prejudice. State v. Irby, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015).

Here, the jurors filled out written questionnaires and the court and counsel questioned several jurors individually based on their answers. Juror 23 did not express any concerns about impartiality on her questionnaire or during individual questioning.[5]

During group jury selection, Girault's attorney explored whether jurors could presume his client innocent if they were aware of his prior convictions. He

---

[5] The court questioned Juror 23 only about a possible scheduling conflict.

asked the jurors, "Suppose you learn that my client was twice convicted of the exact same crime as today. Who says I cannot presume him innocent?" A few jurors expressed concerns and said it would be "hard" but stated they could maintain the presumption. Girault's attorney then asked the panel, "I want you to raise your hands as we did previously, who says I would have a hard time presuming him innocent?"

Juror 23 raised her hand. Before calling on Juror 23, Girault's attorney asked the group, "Suppose the judge says you can consider those two prior convictions, but not to whether or not he committed this offense, but just through that — the fact that there's a similarity there. Could you separate those things?" He then asked Juror 23 what she was thinking and the two had the following exchange:

> A.    Well, if there's a past history, and not knowing really what the first offense was all about, I think I would — I would be inclined to think he was also guilty the second and third time.
> Q.    Okay. Would you presume him guilty?
> A.    Probably.
> Q.    All right. So you're saying that you cannot presume my client innocent today?
> A.    I don't know the circumstances, and if I knew there was one or two other offenses, I would have a hard time.
> Q.    Do you think you may not be a good juror for this case then?
> A.    Probably.
> Q.    So you think [or] don't think you can be impartial to him?
> A.    I guess I would like to know what the facts were on both.
> Q.    Okay. I can't tell you those while we're standing here.
> A.    Okay.
> Q.    I won't be able to do that at all.
> A.    I know. I could be impartial if I knew the facts.
> Q.    You could be impartial if you knew the facts, but on hearing the facts —
> A.    I'm lining towards thinking guilty.
> Q.    All right.
> A.    If there's previous crimes.

Girault's attorney challenged Juror 23 for cause. The court said, "No," denying the challenge without comment. Neither the court nor the State asked Juror 23 any follow-up questions. The court seated Juror 23 on the final panel.

Juror 23's answers amount to an expression of actual bias. She told counsel that she would probably presume Girault guilty "if there's a past history" and that she was leaning toward presuming guilt "[i]f there's previous crimes." While Juror 23 said she "would like to know what the facts were on both [prior crimes]," her answers suggest that she would presume Girault guilty until she learned the facts rather than abide by the presumption of innocence until such time that the facts convinced her otherwise. Neither the trial court nor the prosecutor tried to elicit an assurance from Juror 23 that she could follow the court's instructions and keep an open mind on the issue of guilt.

This case is like Irby. In that case, a juror responded that she " 'would like to say [the defendant]'s guilty' " in response to a question "designed to gauge her ability to judge [the defendant] fairly." Irby, 187 Wn. App. at 196. We reversed Irby's conviction, holding that the juror's answer revealed actual bias with a " 'conspicuous lack of response' " from the court and prosecutor, neither of whom "attempted to elicit from [the] juror, individually, an assurance that she had an open mind on the issue of guilt." Irby, 187 Wn. App. at 196 (quoting Hughes, 258 F.3d at 458). Like the juror in Irby, Juror 23's expression of bias without a subsequent assurance of impartiality warrants reversal.[6]

---

[6] Girault alleges several other trial errors, including prosecutorial misconduct. Because we reverse and remand for a new trial, we do not reach these claims.

We conclude that the trial court did not err in admitting details of Girault's two prior rape convictions as evidence of a common scheme or plan. However, because the trial court erred by denying Girault's for-cause challenge to Juror 23 without a subsequent assurance of impartiality, we reverse and remand.

_____, J

WE CONCUR:

_____        _____, J.