234 P.3d 275 (2010)
STATE of Washington, Respondent,
v.
Germaine Deshonne CARTER, Appellant.
In re the Personal Restraint Petition of Germaine Deshonne Carter.
Nos. 38264-4-II, 39516-9-II.
Court of Appeals of Washington, Division 2.
June 29, 2010.
*276 Catherine E. Glinski, Attorney at Law, Manchester, WA, for Appellant.
Germaine D. Carter, Aberdeen, WA, Appearing Pro Se.
Karen Anne Watson, Pierce County Prosecutor's Office, Tacoma, WA, for Respondent.
WORSWICK, J.
¶ 1 Germaine Carter appeals his convictions for four counts of first degree child rape. He raises trial court evidentiary error, prosecutorial misconduct, and double jeopardy arguments. In a consolidated personal restraint petition (PRP), he also raises additional claims of improper witness vouching and ineffective assistance of counsel. On the double jeopardy issue, we agree and remand with instructions to dismiss three of the four rape convictions. We affirm one rape conviction and deny the PRP.

FACTS
¶ 2 AC, born April 28, 1997, is Carter's daughter. She lived with Carter between 2003 and September 2004. While she lived with her father, he would come into her room at night and rape her. After it was over, he would tell her to either take a shower and go to bed or to just go to sleep. She did not testify as to specific dates for any of the rapes, stating only that they happened "[m]ost of the nights" at his home, more than 4 times, and between 40 and 50 times. IV Report of Proceedings (RP) at 186.
¶ 3 AC moved out of Carter's home in September 2004. She then lived with her aunt and later with her grandmother. After moving to her grandmother's house, AC met a neighbor named AS, and they quickly became close friends.[1] AC and AS were having a sleepover when AC appeared sad. AS asked AC why she was sad. AC told AS that her dad did something to her. AC would not tell AS exactly what happened. AS then asked AC a series of questions, trying to guess what Carter had done to AC. AC eventually said that her dad had put his private parts inside her.
¶ 4 In May 2007, when AC and AS were riding in a car driven by AC's grandmother, AC told AS that she loved and missed her dad. AS asked AC why she would feel that way about her dad after what he did to her. AC's grandmother overheard this remark and asked AC what her dad did to her. AC would not tell but asked AS to tell. AS told AC's grandmother that Carter had raped AC. AC's grandmother then contacted the Pierce County Sheriff's Office.
¶ 5 On May 23, a child forensic interviewer met with AC. AC said that Carter would "`stick his wiener up [her] butt.'" Clerk's Papers (CP) at 3. She also said that it would hurt and that when she cried he would tell her to be quiet. She further stated that Carter had threatened her and had told her not to tell anyone. On May 30, detectives interviewed Carter. Carter denied anally raping AC but said that he used to "`pop zits or boils'" on her buttocks. CP at 3.
¶ 6 The State charged Carter with four counts of first degree child rape. RCW 9A.44.073. The trial court held a Ryan hearing to determine the admissibility of AC's child hearsay statements to her friend, AS. State v. Ryan, 103 Wash.2d 165, 691 P.2d 197 (1984). The trial court heard testimony from AC, AS, and AC's grandmother. The trial court expressed some concerns about the reliability of AC's statements, but it ultimately found them to be reliable and admitted them into evidence. The trial court also found AS's testimony to be reliable and that AS was a particularly strong witness.
¶ 7 A jury heard the case. Several witnesses testified, including AC, AS, AC's grandmother and aunt, and the child forensic interviewer. In its rebuttal argument, the *277 State argued, in response to Carter's argument that AC did not scream when he raped her, "Do you think that [Carter] would have stood for that, and as he's anally raping her, if she lets out noise, do you think she would still be breathing?" VIII RP at 571. The trial court sustained Carter's objection to this remark. Carter never requested a curative instruction.
¶ 8 The trial court instructed the jury, giving them four nearly identical "to convict" instructions,[2] a unanimity instruction,[3] and an instruction stating, "A separate crime is charged in each count."[4] Neither the prosecutor nor Carter requested a jury instruction requiring that the jury find a "separate and distinct act" for each count.
¶ 9 The jury found Carter guilty of all four counts. The trial court denied his motion for a new trial based on the prosecutor's rebuttal argument. Carter appeals.

ANALYSIS

Direct Appeal

Double Jeopardy
¶ 10 Carter contends that the trial court's failure to adequately inform the jury that it had to find a "separate and distinct act" for each of the four identically charged rape counts exposed him to double jeopardy. Appellant's Br. at 14. He did not propose such an instruction to the trial court, nor did he raise the issue below; but because the issue is one of constitutional magnitude, we consider it for the first time on appeal. State v. Hanson, 59 Wash.App. 651, 659, 800 P.2d 1124 (1990). We agree that the instructions were inadequate.
¶ 11 The double jeopardy clauses of the United States and Washington State Constitutions protect a defendant from multiple convictions for the same crime. State v. Tvedt, 153 Wash.2d 705, 710, 107 P.3d 728 (2005). We review jury instructions de novo in the context of the instructions as a whole. State v. Jackman, 156 Wash.2d 736, 743, 132 P.3d 136 (2006). Jury instructions "must make the relevant legal standard manifestly apparent to the average juror." State v. Borsheim, 140 Wash.App. 357, 366, 165 P.3d 417 (2007).
¶ 12 Carter cites State v. Berg, 147 Wash. App. 923, 198 P.3d 529 (2008), for his proposition. The State counters that Carter's argument fails because the charging documents, evidence presented, jury instructions and closing arguments all made clear that each count required proof of a separate act. The State relies on State v. Ellis, 71 Wash.App. 400, 859 P.2d 632 (1993) and State v. Hayes, 81 Wash.App. 425, 914 P.2d 788 (1996).[5]
¶ 13 In Berg, the defendant was charged with two counts of child molestation. 147 Wash.App. at 927-28, 198 P.3d 529. The court gave two separate but nearly identical *278 "to convict" instructions,[6] a standard unanimity instruction,[7] and an instruction stating, "A separate crime is charged in each count."[8]Berg, 147 Wash.App. at 935, 198 P.3d 529. The court found a double jeopardy violation because the trial court did not give a "separate and distinct act" instruction or otherwise require that the jury base each conviction of third degree child molestation on a "separate and distinct" underlying event. Berg, 147 Wash.App. at 930-32, 198 P.3d 529.
¶ 14 In Ellis, we held that the ordinary juror would understand that when two counts charge the very same type of crime, each count requires proof of a different act.[9] 71 Wash.App. at 406, 859 P.2d 632. But the instructions in Ellis, unlike the present case, affirmatively instructed the jury that it was required to unanimously agree that at least one particular act had been proved for each count. 71 Wash.App. at 404-05, 859 P.2d 632. The "to-convict" instructions for the molestation charges made it clear that the jury must find the conduct for count II occurred "on a day other than" count I, and the "two convict" instructions for the rape charges gave different dates. Ellis, 71 Wash.App. at 402, 859 P.2d 632.
¶ 15 In Hayes, Division one of this court reiterated our Supreme Court's holding that no double jeopardy violation results when the information, instructions, testimony and argument clearly demonstrate that the State was not seeking to impose multiple punishments for the same offense. 81 Wash.App. at 439-40, 914 P.2d 788. But the jury instructions in Hayes still conveyed that a separate and distinct act must be found for each count when it stated in the "to-convict" instructions that the jury must find on "an occasion separate and distinct from that charged in [the remaining counts], the defendant had sexual intercourse with [K]." 81 Wash.App. at 431 n. 9, 914 P.2d 788.
¶ 16 The present case is most similar to Berg and is distinguishable from Ellis and Hayes. While the trial court gave a unanimity instruction here, no instruction conveyed the requirement that the jury find a "separate and distinct act" for each count of child rape. And the four "to-convict" instructions, aside from the count number, were exactly the same, including the time period.
¶ 17 Here, Carter's arguments persuade us. The jury instructions did not make the relevant legal standards manifestly apparent to the average juror and exposed Carter to the possibility of multiple convictions for the same criminal act. Thus, we remand with instructions to dismiss three of the four child rape counts.
¶ 18 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder *279 shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: PENOYAR, C.J. and ARMSTRONG, J.
NOTES
[1] AS was 12 years old at the time of trial.
[2] Aside from the count number, the trial court here gave four identical "to-convict" instructions:

To convict the defendant of the crime of rape of a child in the first degree, as charged in Count ..., each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That during the period between the 10th day of December, 2003 and the 10th day of December, 2004, the defendant had sexual intercourse with A.C.;
CP at 68-71.
[3] The trial court here gave the following unanimity instruction:

There are allegations that the defendant committed acts of rape of a child in the first degree on multiple occasions. To convict the defendant on any count of rape of a child in the first degree, one particular act of rape of a child in the first degree must be proved beyond a reasonable doubt and you must unanimously agree as to which act has been proved beyond a reasonable doubt. You need not unanimously agree that the defendant committed all the acts of rape of a child in the first degree.
CP at 72.
[4] The complete instruction given by the trial court is as follows: "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." CP at 37.
[5] All of the cases cited by the parties stem from State v. Noltie, 116 Wash.2d 831, 843-43, 809 P.2d 190 (1991), in which our Supreme Court held that in multiple acts cases where several acts are alleged, jury must be unanimous as to which act constitutes the count charged and that they are to find "separate and distinct acts" for each count when the counts are identically charged.
[6] The "to convict" instructions in relevant part were as follows:

To convict the defendant of the crime of child molestation in the third degree, as charged in count ..., each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That during a period of time intervening between March 1, 2007 through May 6, 2007, the defendant had sexual contact with A.A.
Berg, 147 Wash.App. at 934, 198 P.3d 529.
[7] Aside from the specific factual information, the unanimity instruction language in Berg is the same as the instruction in this case.
[8] This instruction in Berg is substantially the same as in the case here.
[9] In Ellis, the defendant was charged with two counts of first degree child molestation and two counts of first degree child rape. Each of the trial court's "to convict" instructions differed. For the instruction regarding count I, the instruction stated "that to convict on count I, the jury had to find, beyond a reasonable doubt, that between January 1987 and December 1989, Ellis had sexual contact with C.R., that C.R. was less than 12 years old, and that Ellis was more than 36 months older than C.R." Ellis, 71 Wash.App. at 401-02, 859 P.2d 632. The court set forth the same elements for count II in a separate instruction adding, that count II had to have occurred "on a day other than Count I." Ellis, 71 Wash. App. at 402, 859 P.2d 632. For count III, the instruction said "that to convict on count III, the jury had to find, beyond a reasonable doubt, that between January 1987 and June 1988, Ellis had sexual intercourse with C.R., that C.R. was less than 12 years old, and that Ellis was more than 24 months older." Ellis, 71 Wash.App. at 402, 859 P.2d 632. Regarding count IV, the court reiterated the same elements as it had for count III; the dates, however, were between January 1988 and December 1989. Ellis, 71 Wash.App. at 401-02, 859 P.2d 632.