[Nos. 82029-5; 82425-8.   En Banc.]
Argued September 16, 2010.     Decided June 9, 2011.

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD HENRY MUTCH, *Appellant*.

---

648

*David L. Donnan* and *Nancy P. Collins* (of *Washington Appellate Project*), for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Hilary A. Thomas, Deputy*, for respondent.

¶1 OWENS, J. — Richard Henry Mutch was convicted of five counts of second degree rape and one count of second degree kidnapping. After his life sentence was vacated several years after his conviction, the trial court imposed an exceptional sentence of 400 months at resentencing. Mutch raises several challenges to this exceptional sentence, including the trial court's authority to impose the sentence on the basis that multiple current offenses and a high offender score would otherwise result in some crimes going unpunished and whether the sentence effects a double jeopardy violation. We affirm the final judgment and sentence.

## FACTS

¶2 In 1994, over the course of a night and through the next morning, Mutch repeatedly raped J.L. in her home, under threat of force, while her daughter was sleeping in another room. J.L. testified about five distinct episodes of assault that each included oral sex and vaginal intercourse. Between the first four episodes of assault, Mutch stopped for about an hour and made J.L. say various things aloud, including that he is a king and that she belonged to him. After the fourth episode, Mutch slept. When he awoke, he again forced J.L. to have sex in the same manner as the four previous times. Mutch was arrested when he took J.L. to get a marriage license, and J.L. secretly told a clerk that she was being held and forced to marry Mutch against her will. Mutch admitted to a detective that he participated in multiple sexual acts with J.L. but claimed that their involvement was consensual. His defense at trial also centered on consent.

¶3  A jury convicted Mutch of five counts of second degree rape and one count of second degree kidnapping. The trial court originally sentenced Mutch as a persistent offender to life in prison without the possibility of parole, but this court vacated his sentence in 2008 because one of Mutch's strike offenses was not comparable to a Washington strike offense under *In re Personal Restraint of Lavery*, 154 Wn.2d 249, 258, 111 P.3d 837 (2005). Prior to resentencing at the trial court, the State filed a notice of intent to seek an exceptional sentence. The trial court resentenced Mutch to an exceptional sentence of 400 months, finding that Mutch's offender score was 20, while the sentencing grid only went up to 9, so his multiple current offenses and high offender score would leave three counts of rape and one count of kidnapping unpunished without an exceptional sentence. The trial court noted that the exceptional sentence was justified pursuant to both the State's argument *and* the trial court's independent determination.

¶4  Mutch filed direct appeals of his new sentence with this court and the Court of Appeals, arguing that the trial court did not have the authority to impose an exceptional sentence and that the sentence was invalid because his offender score was miscalculated. This court consolidated these appeals and granted direct review. Meanwhile, while review was pending, the trial court held a second resentencing hearing and applied a lower offender score based on the State's concession that Mutch's offender score had been incorrectly calculated. The trial court again imposed an exceptional sentence of 400 months, though this time based on an offender score of 16. Mutch filed another appeal with this court, challenging the newest judgment and sentence. We consolidated Mutch's appeals of his first and second resentencing hearings and consider them both now.

## ISSUES

¶5  1. Was Mutch's offender score miscalculated and, if so, does that invalidate the basis for his exceptional sentence?

¶6 2. Did the trial court have the authority to impose an exceptional sentence?

¶7 3. Is Mutch being punished in violation of the constitutional protection against double jeopardy?

ANALYSIS

*I. Offender Score*

¶8 Mutch argues that his offender score was miscalculated and that the error invalidates the basis for his exceptional sentence. We review the calculation of an offender score de novo. *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997). Here, the State concedes that Mutch's offender score was miscalculated at his first resentencing hearing. Remand for resentencing with the correct offender score would typically be the appropriate remedy. *Id.* at 192-93. However, while review was pending in this court, on the State's motion, the trial court held a new resentencing hearing to remedy the conceded error. The trial court resentenced Mutch with a corrected offender score of 16, the total arrived at after extracting his prior conviction for federal bank robbery from the calculation and counting his two prior convictions for first degree robbery together. *Compare* Clerk's Papers (CP) at 9, *with* Suppl. CP at 166; *see* former RCW 9.94A.360(3), (6)(c) (1992), *recodified as* RCW 9.94A.525(3), (5)(a)(ii). At 16, the score is still well above 9, the high-end score on the sentencing grid.

¶9 Mutch argues that his offender score is still incorrect because the trial court did not consider his five counts of rape to be "the same criminal conduct." We review the " 'trial court's determination of what constitutes the same criminal conduct [for] abuse of discretion or misapplication of the law.' " *State v. Tili*, 139 Wn.2d 107, 122, 985 P.2d 365 (1999) (quoting *State v. Walden*, 69 Wn. App. 183, 188, 847 P.2d 956 (1993)). Under the law in effect at the time of Mutch's conviction, multiple offenses were considered "the same criminal conduct" for sentencing purposes if they involved the same criminal intent, were committed at

the same time and place, and involved the same victim. Former RCW 9.94A.400(1)(a) (1990), *recodified as* RCW 9.94A-.589(1)(a). Mutch argues that his five counts of rape meet these criteria and should therefore have been counted together in the offender score as a single offense.

¶10 Mutch advanced this argument pro se at his sentencing hearing, and the trial court rejected it without any analysis on the record. We note that a trial court's outright refusal to even consider the argument that crimes that are the same criminal conduct for sentencing purposes may be error.[1] Here, although there was some argument at the resentencing hearing, the court's analysis is not evident in the record. Nevertheless, there is sufficient evidence in the trial court record to sustain a finding that the multiple rapes should be treated separately for sentencing purposes. We therefore affirm the trial court's calculation at the second resentencing hearing because it was not an abuse of discretion to count each rape separately in calculating the offender score.

¶11 In *Tili*, this court found that while the unit of prosecution for rape is any penetration, 139 Wn.2d at 114, the multiple counts in that case constituted the same criminal conduct for sentencing purposes. *Id.* at 124-25. The *Tili* court distinguished *State v. Grantham*, 84 Wn. App. 854, 856-57, 859, 860-61, 932 P.2d 657 (1997), a Court of Appeals case that found that multiple counts of rape were *not* the same criminal conduct. *Tili*, 139 Wn.2d at 123-24. The critical difference between *Tili* and *Grantham* is that the defendant in *Grantham* " 'had the time and opportunity to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act,' " so his " 'crimes were sequential, not simultaneous or continuous.' " *Id.* (quoting *Grantham*, 84 Wn. App. at 859). The two rapes in *Grantham*

---

[1] We have acknowledged that the outright refusal of a trial court to consider sentencing arguments is error. *See, e.g.*, *State v. Osman*, 157 Wn.2d 474, 482, 139 P.3d 334 (2006) ("A court abuses its discretion if it categorically refuses to impose a particular sentence." (citing *State v. Khanteechit*, 101 Wn. App. 137, 139, 5 P.3d 727 (2000))).

occurred in the same evening, interrupted by threats and other physical assaults. *Grantham*, 84 Wn. App. at 856. In contrast, Tili's three counts of rape occurred over approximately two minutes, so the court found it "unlikely that Tili formed an independent criminal intent." *Tili*, 139 Wn.2d at 124. The distinction turned on the objective formation of criminal intent by the defendant between the multiple counts of rape. *Id.* at 123; *see State v. French*, 157 Wn.2d 593, 613, 141 P.3d 54 (2006).

¶12 Here, Mutch's criminal acts happened over the course of a night and the entire next morning. Between the last incident of rape and the previous four, Mutch slept, which certainly required him to form a new criminal intent once he awoke. Moreover, the fifth rape took place in another room of the house. Regarding counts one through four, Mutch emphasizes J.L.'s testimony that "the same thing" happened "four times that night," referring to repeated episodes of oral and vaginal rape, broken by gaps of time with no assault where Mutch made her repeat things, including "who's the king and who do you belong to." 2 Verbatim Report of Proceedings (Trial, Sept. 21, 1994) (VRP) at 178. Mutch argues that he barely paused, never changed his focus, and that he therefore did not form new intent. His argument is unpersuasive.

¶13 The facts of this case are more like those in *Grantham* than in *Tili* or other cases where the different counts of rape occurred within a very short time period. *See, e.g., State v. Palmer*, 95 Wn. App. 187, 190, 975 P.2d 1038 (1999). J.L. clearly testified that Mutch stopped between each of the episodes of rape and that the time between each rape episode during the night was "around an hour or so." 2 VRP (Trial, Sept. 21, 1994) at 273. Given these substantial breaks between the different counts, Mutch clearly had time to pause, reflect, and either cease or continue. He objectively formed new criminal intent.

¶14 While the trial court should have done this analysis on the record, the trial record is sufficient to sustain the ultimate finding that Mutch's five rape counts are not the

same criminal conduct for sentencing purposes. We therefore affirm the calculation of Mutch's offender score that was used at his second resentencing.

## II. *Exceptional Sentence*

■■ ¶15 Mutch argues that the imposition of an exceptional sentence above the standard range is not authorized by statute and violates his Sixth Amendment right to a jury trial. We review these claims de novo. *State v. Alvarado*, 164 Wn.2d 556, 560-61, 563, 192 P.3d 345 (2008). We hold that the trial court had statutory authority to impose an exceptional sentence and that, as imposed, the sentence does not include constitutional or other reversible error.

¶16 At the time of Mutch's trial in 1994, state law allowed for trial courts to impose exceptional sentences, without findings of fact by juries, if "there [were] substantial and compelling reasons." Former RCW 9.94A.120(2) (1994). One "illustrative" basis for an exceptional sentence, enumerated by statute, was that a defendant's multiple offenses would "result[ ] in a presumptive sentence that is clearly too lenient." Former RCW 9.94A.390(2)(g) (1990). This was but one factor in an explicitly nonexclusive list of potential bases for departure from a standard range sentence. Former RCW 9.94A.390. In 1994, there was nothing barring a trial court judge from implementing an exceptional sentence based on the "free crime" exception.

¶17 The United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 301, 313-14, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), caused the legislature to amend chapter 9.94A RCW to conform with *Blakely*'s holding that the Sixth Amendment requires that a *jury* must determine any aggravating fact, other than prior convictions, used to impose punishment beyond the standard range. LAWS OF 2005, ch. 68, § 1. The revised statute separately indicates a list of aggravating factors that require a jury finding of fact, RCW 9.94A.535(3), and an exclusive list of factors by which trial courts can impose an aggravated exceptional sentence without a finding of fact by a jury, RCW 9.94A.535(2). In relevant part, RCW 9.94A.535 states:

The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence. Facts supporting aggravated sentences, *other than the fact of a prior conviction*, shall be determined pursuant to the provisions of RCW 9.94A.537.

. . . .

(2) . . . The trial court may impose an aggravated exceptional sentence *without a finding of fact by a jury* under the following circumstances:

. . . .

(c) The defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished.

(Emphasis added); *see* RCW 9.94A.535(3) (distinguishing aggravating factors that require jury findings from factors enumerated in subsection (2)). The plain language in the revised statute clearly establishes that the aggravating factors listed in RCW 9.94A.535(2) do not require a jury's finding of fact and can be considered and imposed by the court without the procedure set out in RCW 9.94A.537.[2]

¶18 This court's decisions confirm the plain meaning and constitutionality of the relevant statutes. Case law in effect in 1994 established that a judge may impose an exceptional sentence when a defendant's high offender score combines with multiple current crimes so that a standard sentence would result in unpunished or "free" crimes. *State v. Stephens*, 116 Wn.2d 238, 243-44, 803 P.2d 319 (1991); *see State v. Smith*, 123 Wn.2d 51, 56, 864 P.2d 1371 (1993). Those cases were overruled in part by this court's holding that "[t]he conclusion that allowing a current offense to go unpunished [as] clearly too lenient is a

---

[2] A statutory revision excepting prior convictions from the aggravating facts that must be found by a jury is consistent with the express constitutional holding of *Blakely* that " '[o]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " 542 U.S. at 301 (emphasis added) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

factual determination that *cannot* be made by the trial court." *State v. Hughes*, 154 Wn.2d 118, 140, 110 P.3d 192 (2005), *overruled on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). *Hughes* was based on the "clearly too lenient" aggravating factor from former RCW 9.94A.390(2)(g).

¶19 We have since clarified, however, that while necessary to determine whether a sentence is "clearly too lenient," a jury's fact-finding is not required "when a sentencing provision allows an exceptional sentence to flow *automatically* from the existence of free crimes." *Alvarado*, 164 Wn.2d at 568. In *Alvarado*, we explained that the determination that some offenses would go unpunished without an exceptional sentence "rests solely on criminal history and calculation of the offender score, without the need for additional fact finding by the jury" and held that RCW 9.94A.535(2)(c) flows automatically from the existence of free crimes. *Id.* at 569. We expressly held that RCW 9.94A.535(2)(c) does not violate the Sixth Amendment and that a trial court can impose an exceptional sentence based on the existence of "free crimes" without a jury finding. *Id.* at 568-69.

¶20 Here, the trial court concluded that "[i]ndependent of any argument by the State relating to notice given of an exceptional sentence, . . . the Court has reached its own determination that the defendant should receive an exceptional sentence over the presumptive standard range based on RCW 9.94A.535(2)(c)." CP at 24. *Blakely*, *Alvarado*, and the relevant statutory authority, both at the time of Mutch's trial and his resentencing hearings, clearly indicate that trial courts are permitted to impose exceptional sentences based on prior convictions. We accordingly hold that the trial court had statutory authority to impose an exceptional sentence and that its imposition of the sentence does not violate Mutch's Sixth Amendment rights.

¶21 Our holding is not compromised by the fact that the State failed to provide pretrial notice of its intention to seek an exceptional sentence. *See* RCW 9.94A.537(1).

In 1994, because the State originally argued that Mutch was a persistent offender, it did not seek or give notice of its intent to seek an exceptional sentence. RCW 9.94A.535(2) and (3) plainly compel the procedure under RCW 9.94A-.537, including notice, only in the case of aggravating circumstances that must be found by a jury.[3] While the State did not provide pretrial notice to Mutch, the trial court still had the right to independently impose the exceptional sentence.

¶22 We also dismiss Mutch's argument that he had the right to have a jury determine, beyond a reasonable doubt, whether his prior convictions were comparable to Washington offenses or were "violent" offenses. "[T]he federal constitution does not require that prior convictions be proved to a jury beyond a reasonable doubt." *State v. Smith*, 150 Wn.2d 135, 143, 75 P.3d 934 (2003); *see Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). "To give effect to the prior conviction exception, Washington's sentencing courts must be allowed as a matter of law to determine not only the fact of a prior conviction but also those facts 'intimately related to [the] prior conviction.'" *State v. Jones*, 159 Wn.2d 231, 241, 149 P.3d 636 (2006) (alteration in original) (quoting *United States v. Moore*, 401 F.3d 1220, 1225 (10th Cir. 2005)). Any fact that follows necessarily or as a matter of law is included within the prior conviction exception. *Id.* at 243. Mutch was previously convicted of two counts of first degree robbery in California. Defendants do not have a right to a jury determination of whether a prior foreign conviction is comparable to a Washington conviction. *State v. Thiefault*, 160

---

[3] In *State v. Powell*, 167 Wn.2d 672, 223 P.3d 493 (2009), five justices agreed that the State must provide pretrial notice of the aggravating factors it relies on to seek an exceptional sentence. *Id.* at 689 (Stephens, J., concurring), 691 (Owens, J., dissenting). We do not reach the issue of notice in this case because we find that the procedures of RCW 9.94A.537 do not apply to the aggravating factors enumerated in RCW 9.94A.535(2). Because a jury finding is unnecessary, we also decline to reach Mutch's argument that the State cannot impanel a new jury to consider the aggravating factors (his prior convictions) under *State v. Pillatos*, 159 Wn.2d 459, 465, 150 P.3d 1130 (2007), or the legislature's subsequent amendments to chapter 9.94A RCW, Laws of 2007, ch. 205, § 2; RCW 9.94A.537(2).

Wn.2d 409, 418-20, 158 P.3d 580 (2007). In Washington, first degree robbery and second degree kidnapping are "violent" offenses. Former RCW 9.94A.030(36)(a) (1994); RCW 9.94A.030(53)(a)(i), (vi). Whether Mutch's previous offenses were comparable or "violent" are facts that follow necessarily and are intimately related, as a matter of law, to the actual convictions; he is therefore not entitled to a jury determination of these facts.

¶23 Finally, Mutch argues that his exceptional sentence is invalid because of alleged errors in the trial court's findings of fact and conclusions of law. At the second resentencing, the trial court failed to revise its finding that "[Mutch's] high offender score will result in three counts of Rape in the Second Degree going unpunished and one count of Kidnapping in the Second Degree going partially unpunished." Suppl. CP at 182; *see* CP at 24. In fact, with the new offender score of 16, only two counts of rape go unpunished and one count of kidnapping goes partially unpunished. This error, however, does not invalidate Mutch's exceptional sentence because it is clear that the trial court would have given Mutch the same exceptional sentence had this finding been correctly edited. *See State v. Jackson*, 150 Wn.2d 251, 276, 76 P.3d 217 (2003) (finding that an appellate court may uphold an exceptional sentence where it is clear the trial court would have imposed it anyway, absent an erroneous factor). Because the entire purpose of the second resentencing hearing was to reconsider the sentence with a revised offender score, we are confident that the trial court intended to impose an exceptional sentence, despite its failure to revise one finding related to the lower offender score.

¶24 Mutch also argues that the exceptional sentence is invalid because the court failed to specifically find "substantial and compelling reasons" to justify an exceptional sentence. RCW 9.94A.535. While the trial court made "Findings of Fact and Conclusions of Law Supporting Exceptional Sentence," Suppl. CP at 180-82, Mutch argues they are inadequate written findings under RCW 9.94A.535 because

the court did not explicitly state that Mutch's high offender score is a "substantial and compelling reason[ ]." This argument is without merit. In relevant part, RCW 9.94A-.535 states:

> The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence. . . .
>
> Whenever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law.

Nothing in the plain language of the statute requires a sentencing court to use the precise phrase "substantial and compelling." Moreover, the legislature specifically stated that a high offender score that results in current offenses going unpunished is a reason justifying an exceptional sentence. RCW 9.94A.535(2)(c). The trial court made a written finding that the defendant's high offender score will result in current offenses going unpunished. This is a written finding of a substantial and compelling factor, justifying an exceptional sentence, in satisfaction of RCW 9.94A.535.

¶25 Accordingly, we find that the trial court was authorized by statute to impose an exceptional sentence and that such imposition neither violated the relevant statutes or constitutional provisions nor was invalid on other bases.

### III. Double Jeopardy

¶26 Mutch claims that the exceptional sentence imposed at resentencing effects a double jeopardy violation. "The constitutional guaranty against double jeopardy protects a defendant . . . against multiple punishments for the same offense." *State v. Noltie*, 116 Wn.2d 831, 848, 809 P.2d 190 (1991); *see* U.S. CONST. amend. V; WASH. CONST. art. I, § 9. A double jeopardy claim is of constitutional proportions and may be raised for the first time on appeal. *State v. Jackman*, 156 Wn.2d 736, 746, 132 P.3d 136 (2006). Our

review is de novo. *In re Pers. Restraint of Francis*, 170 Wn.2d 517, 523, 242 P.3d 866 (2010).

¶27 Mutch specifically contends that he is being punished separately for five counts of rape because, he argues, vague jury instructions allowed the possibility that the jury erroneously convicted him of all five counts based only on a single criminal act. His argument is supported by holdings in Divisions One and Two of the Court of Appeals. *See State v. Carter*, 156 Wn. App. 561, 234 P.3d 275 (2010); *State v. Berg*, 147 Wn. App. 923, 198 P.3d 529 (2008). The Court of Appeals held that, where jury instructions were unclear about the need to find that each count arises from a " 'separate and distinct' " act in order to convict, the resulting ambiguity of the factual basis for a jury's multiple guilty verdicts "potentially exposed [the defendant] to multiple punishments for a single offense" in violation of the double jeopardy clauses. *Berg*, 147 Wn. App. at 935; *see Carter*, 156 Wn. App. at 568 (finding "the *possibility* of multiple convictions for the same criminal act" (emphasis added)).

¶28 The jury instructions in Mutch's case were similar to those employed in *Carter* and *Berg*; namely, they failed to include sufficiently distinctive "to convict" instructions or an instruction that each count must be based on a separate and distinct criminal act. *See Carter*, 156 Wn. App. at 567; *Berg*, 147 Wn. App. at 934-35. In Mutch's case, the "to convict" instructions for each rape count were nearly identical, including that they all indicated the same time of occurrence of the criminal conduct, between "the 2nd day of February, 1994 and the 3rd day of February, 1994." Suppl. CP at 217-26, 233-37. None expressly stated that the jury must find that each charged count represents an act distinct from all other charged counts. The Mutch jury was further instructed that

> [a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

Suppl. CP at 243. The Court of Appeals has specifically held that this separate crime instruction is not saving, noting that it still fails to "inform[ ] the jury that each 'crime' required proof of a different act." *State v. Borsheim*, 140 Wn. App. 357, 367, 165 P.3d 417 (2007); *see Berg*, 147 Wn. App. at 935. We agree. Finally, Mutch's jury was instructed to "deliberate with a view to reaching a unanimous verdict," though it was also told that "you must decide *the case* for yourself."[4] Suppl. CP at 247 (emphasis added); *cf. Borsheim*, 140 Wn. App. at 369 (finding that, absent language that the jury must " 'unanimously agree that at least one particular act has been proved beyond a reasonable doubt *for each count*,' " the unanimity instruction did not protect against a double jeopardy violation (quoting *State v. Ellis*, 71 Wn. App. 400, 402, 859 P.2d 632 (1993))).

¶29 The jury instructions in Mutch's case were lacking for their failure to include a "separate and distinct" instruction; we agree with the *Berg* and *Carter* courts to the extent that they found similar instructions to be flawed. However, flawed jury instructions that permit a jury to convict a defendant of multiple counts based on a single act do not necessarily mean that the defendant received multiple punishments for the same offense; it simply means that the defendant *potentially* received multiple punishments for the same offense. "In order to violate federal and state double jeopardy standards, there must be multiple punishments for the 'same offense'." *Noltie*, 116 Wn.2d at 848. While the Court of Appeals in both *Berg* and *Carter* recognized that the faulty jury instructions created only the possibility of a double jeopardy violation, *Berg*, 147 Wn. App. at 935; *Carter*, 156 Wn. App. at 568, it did not look beyond the jury instructions or engage in further inquiry, *see, e.g., Berg*, 147 Wn. App. at 935 ("[T]he double jeopardy

---

[4] Mutch does not make a unanimity claim; however, we note that failure to give a unanimity instruction in Mutch's case would be harmless error. *See State v. Bobenhouse*, 166 Wn.2d 881, 894-95, 214 P.3d 907 (2009) (finding harmless error where there was no unanimity instruction but detailed, uncontradicted testimony of each alleged crime and observing that "if the jury reasonably believed one incident occurred, all the incidents must have occurred").

violation at issue here results from omitted language in the instructions, not the State's proof or the prosecutor's arguments."). We disapprove of such limited review.

¶30 This court has established that "[i]n reviewing allegations of double jeopardy, an appellate court may review the entire record to establish what was before the court." *Noltie*, 116 Wn.2d at 848-49 (applying this scope of review to find no double jeopardy violation based on information that identically charged separate counts). This court has similarly considered the full record in other double jeopardy cases. *See, e.g.*, *State v. Kier*, 164 Wn.2d 798, 809-11, 194 P.3d 212 (2008); *see also Ellis*, 71 Wn. App. at 404-05 (noting the parties' arguments in detail); *State v. Hayes*, 81 Wn. App. 425, 440, 914 P.2d 788 (1996) ("No double jeopardy violation results when the information, instructions, testimony, and argument clearly demonstrate that the State was not seeking to impose multiple punishments for the same offense.").

¶31 While the court may look to the entire trial record when considering a double jeopardy claim, we note that our review is rigorous and is among the strictest. Considering the evidence, arguments, and instructions, if it is not clear that it was "*manifestly apparent* to the jury that the State [was] not seeking to impose multiple punishments for the same offense" and that each count was based on a separate act, there is a double jeopardy violation. *Berg*, 147 Wn. App. at 931 (emphasis added). The remedy for such a violation is to vacate the potentially redundant convictions.[5] We note here that our holding would be the same whether we rigorously considered the entire trial record to decide if the jury instructions, in light of the full record, actually effected a double jeopardy error or if we held the instructions to be erroneous because of the risk of error and then reviewed for

---

[5] In *Berg*, the Court of Appeals vacated one of two identically charged counts of child molestation. 147 Wn. App. at 935. The *Carter* court similarly vacated the defendant's convictions of three of four child rape counts. 156 Wn. App. at 568.

harmlessness.[6] As a result, this case does not provide an occasion for us to determine the exact review process for double jeopardy claims arising out of jury instructions, only that we follow the precedent of our other double jeopardy cases, which instructs us to look at all the facts of the case.

¶32 Mutch's case presents a rare circumstance where, despite deficient jury instructions, it is nevertheless manifestly apparent that the jury found him guilty of five separate acts of rape to support five separate convictions. In fact, we are convinced beyond a reasonable doubt, based on the entire record, that the jury instructions did not actually effect a double jeopardy violation. The information charged Mutch with five counts based on allegations that constituted five separate units of prosecution. *See State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998); *see also Tili*, 139 Wn.2d at 115. J.L. testified to five separate episodes of rape. This is the exact number of "to convict" instructions that were given alternatively for first and second degree rape. During its cross-examination of J.L., the defense did not focus on challenging her account of how many sexual acts occurred but rather asked more about her relationship and previous interactions with Mutch, suggesting consent. A detective testified that Mutch admitted to engaging in multiple sexual acts with J.L. The State discussed all five episodes of rape in its arguments, and the defense did not argue insufficiency of evidence as to the number of alleged criminal acts or question J.L.'s credibility regarding the number of rapes but instead argued that she consented and was not credible to the extent she denied consenting. In light of all of this, we find that it was manifestly apparent

---

[6] Under the latter analysis, an erroneous jury instruction that allows for a *potential* double jeopardy violation is constitutional in nature, so we would apply constitutional harmless error analysis. *See State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002) ("[W]e must 'conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.'" (quoting *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999))). In other words, where a jury instruction permits a jury to convict a defendant of multiple offenses based on a single offense, we would presume a double jeopardy violation unless we are convinced beyond a reasonable doubt that the error did not affect the result.

to the jury that each count represented a separate act; if the jury believed J.L. regarding one count, it would as to all. Mutch is not being punished multiple times for the same criminal act. We are convinced of this beyond a reasonable doubt: a double jeopardy violation did not actually follow from the jury instructions.

¶33 Finally, Mutch argues that it is a double jeopardy violation that he was resentenced at all. This claim is without merit. Resentencing to correct an erroneous sentence does not violate a defendant's right against double jeopardy. *State v. Freitag*, 127 Wn.2d 141, 145, 896 P.2d 1254, 905 P.2d 355 (1995). Though the trial court's decision to hold a second resentencing hearing while review was pending in this court was unconventional and should be disfavored, it did not violate Mutch's double jeopardy rights.

## CONCLUSION

¶34 We hold that trial courts have independent authority to impose an exceptional sentence under RCW 9.94A-.535(2) on the basis of multiple current offenses and a high offender score that would otherwise result in some crimes going unpunished. We find, based on the facts of Mutch's case, that his sentence does not effect a double jeopardy violation and that there is no reversible error in the calculation of his offender score or in the final judgment and sentence. We therefore affirm the exceptional sentence.

MADSEN, C.J.; C. JOHNSON, ALEXANDER, CHAMBERS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ.; and SANDERS, J. PRO TEM., concur.