# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No.  58818-8-II |
| MICHAEL MUTHEE MUNYWE, | |
| Petitioner, | UNPUBLISHED OPINION |

PRICE, J. — In his personal restraint petition (PRP), Michael M. Munywe seeks relief from personal restraint following his convictions for second degree rape and unlawful imprisonment. Munywe argues that (1) his conviction for unlawful imprisonment violates double jeopardy, (2) there was insufficient evidence to support his unlawful imprisonment conviction, (3) the time for trial rules and his constitutional speedy trial rights were violated, (4) his constitutional rights were violated by law enforcement conduct during his interrogation, (5) he received ineffective assistance of counsel, and (6) the State committed prosecutorial misconduct.

We disagree and deny Munywe's PRP.

## FACTS

### I. BACKGROUND

On November 21, 2018, law enforcement responded to a 911 call from 15-year-old A.G. Law enforcement arrived at A.G.'s location and found her with Munywe.  A.G. told law enforcement that Munywe used his hands to push A.G.'s head down and then "put his penis inside of her mouth."  6 Verbatim Rep. of Proc. (VRP) at 529.  Shortly thereafter, law enforcement

arrested Munywe. After being advised of his *Miranda* rights, Munywe denied having any sexual contact with A.G.

On the same day of the alleged rape, a sexual assault nurse examiner (SANE nurse) collected swabs from A.G.'s mouth and cheek. Law enforcement also obtained a search warrant to search Munywe's body for DNA evidence. A female crime scene technician swabbed Munywe's genitals for DNA.

After an investigation, the State charged Munywe with first degree rape and first degree kidnapping with sexual motivation.

II. PRETRIAL PROCEEDINGS

Munywe's trial was continued six times. Five orders granting continuances were granted "upon agreement of the parties pursuant to CrR 3.3(f)(1)" or "in the administration of justice pursuant to CrR 3.3(f)(2)." Br. of Resp't App. at 42-43, 46, 49, 52. The sixth continuance was "for administrative necessity" because the trial court judge was out sick and there were no other judicial officers available to preside over the trial that day. Although his counsel did not object to any of the continuances, Munywe personally objected to several of them. Munywe's trial commenced approximately 14 months after he was charged.

On January 22, 2020, the scheduled first day of trial, Munywe's counsel was also sick and so another attorney filled in to represent Munywe for the day. Munywe's stand-in counsel noted that Munywe had written a letter in Swahili and informed the trial court that Munywe wanted to address the trial court directly. The trial court allowed Munywe to speak. Munywe said that his charges should be dismissed because the time for trial rules and his constitutional speedy trial right

2

had been violated. The trial court deferred ruling on Munywe's oral motion until his primary trial counsel returned.

The next day, Munywe's primary trial counsel returned and re-raised the timely trial issues that Munywe raised the day before. The trial court stated that it had reviewed the case file and did not "see any violation." 2 VRP at 33. Munywe's counsel responded that he agreed with the trial court and that he had advised Munywe not to file a written motion. Munywe's counsel also said that he would not be filing any formal motion because he was bound by the Rules of Professional Conduct not to file a motion with no reasonable basis in law or fact. The trial court noted that Munywe's objection was preserved but that there were no time for trial or constitutional speedy trial violations.

III. TRIAL

At Munywe's jury trial, A.G., several law enforcement officers, a SANE nurse, and a forensic scientist with the Washington State Patrol Crime Lab all testified for the State.

A.G. testified that she was coming home from school activities when she got off a bus and started walking home in the dark. She explained that as she started walking, a stranger, Munywe, began walking beside her and talking to her. A.G. decided to not go directly home because she did not want Munywe to know where she lived.

Eventually, Munywe grabbed A.G.'s wrist. A.G. tried to pull away more than once, with enough force to let Munywe know that she did not want to be held, but she was unable to escape. Munywe walked in front of A.G., leading her up a hill while continuing to hold A.G.'s wrist.

A.G. explained that Munywe led her to "an alley" where he pushed her down to her knees. 6 VRP at 573. A.G. testified that Munywe then took out his penis. A.G. told Munywe that she

3

"[did not] want to do this." 6 VRP at 579. But Munywe grabbed A.G.'s head with both hands and forced his penis into A.G.'s mouth.

During the testimony, a juror apparently was coughing. At a recess, the trial court discussed the health of the juror with both counsel. Munywe's counsel and the State both said that, even with the coughing, it seemed like the juror was paying attention. Later, outside the presence of the rest of the jury, the trial court questioned the juror about her health. The juror stated that despite her coughing episodes, she was still listening to the evidence and that she felt that she was getting better. The trial court did not dismiss the juror.

The forensic scientist testified and said that DNA testing showed that swabs taken from A.G.'s cheek contained Munywe's DNA. The forensic scientist also testified that DNA testing showed that Munywe's penile swab contained A.G.'s DNA.

After the State rested, the defense rested without presenting any evidence.

IV. JURY INSTRUCTIONS AND CLOSING ARGUMENTS

The case proceeded to jury instructions. The trial court instructed the jury on the charged offenses, as well as several lesser included offenses, including second degree rape and unlawful imprisonment. The trial court instructed the jury that if it did not find Munywe guilty of first degree rape, it could find him guilty of second degree rape if the State proved beyond a reasonable doubt that Munywe engaged in sexual intercourse with A.G. by forcible compulsion. The trial court instructed that "forcible compulsion" was defined as "physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to oneself or another person or in fear of being kidnapped or that another person will be kidnapped." Clerk's Papers (CP) at 29.

The trial court also instructed the jury that if it did not find Munywe guilty of first degree kidnapping, it could find Munywe guilty of unlawful imprisonment if it found that the State proved beyond a reasonable doubt that Munywe restrained A.G.'s movements and that Munywe acted knowingly. The trial court instructed that, in this context, "restrain" means "to restrict another person's movements without consent and without legal authority in a manner which interferes substantially with that person's liberty." CP at 37.

Following the instructions to the jury, the parties gave their closing arguments. The State argued that Munywe committed the rape with forcible compulsion when he grabbed A.G.'s head and forced his penis into her mouth. And in addition to explaining why Munywe's acts amounted to forcible compulsion, the State explained how Munywe had restrained A.G. before the rape. The State argued that Munywe grabbed A.G.'s hand and that A.G. tried to pull it away but that Munywe would not let go. Instead of letting her go, the State argued that Munywe dragged A.G. to an alley because he wanted to rape her.

V. VERDICT, SENTENCING, AND POST-VERDICT POSTURE

The jury found Munywe guilty of the lesser included offenses of second degree rape and unlawful imprisonment. The jury also found, via a special verdict form, that Munywe committed the unlawful imprisonment with sexual motivation. The trial court sentenced Munywe to an indeterminate sentence of 136 months to life followed by lifetime community custody.

Munywe filed a direct appeal, arguing, in relevant part, that the trial court erred by declining to dismiss a juror who was coughing excessively during testimony. *State v. Munywe*, No. 54681-7-II, slip op. at 6 (Wash. Ct. App. Jan. 19, 2022) (unpublished).[1] In a statement of

---

[1] https://www.courts.wa.gov/opinions/pdf/D2%2054681-7-II%20Unpublished%20Opinion.pdf.

additional grounds (SAG), Munywe also claimed that there was insufficient evidence that he restrained, abducted, or kidnapped A.G. and that any crimes took place. *Id.* at 12. This court affirmed, holding that the trial court did not err by declining to dismiss the juror and that sufficient evidence supported his convictions. *Id.*

Munywe also filed two complaints in federal district court under 42 U.S.C. § 1983, alleging that law enforcement officers violated his constitutional rights during his interrogation. Munywe claimed that law enforcement violated his Fourth Amendment right to be free from unreasonable searches when he was subjected to a cross-gender strip search during the collection of his DNA from his genitals. Munywe also argued that law enforcement used coercive police tactics to induce a confession from him. The federal district court considered the merits of Munywe's claims and dismissed them on summary judgment.

Munywe filed this timely PRP.[2]

## ANALYSIS

Relief by way of a collateral challenge through a PRP is extraordinary; the petitioner must meet a high standard before this court will disturb an otherwise settled judgment. *In re Pers.*

---

[2] The final mandate in Munywe's direct appeal was issued on June 14, 2022. Munywe filed his PRP on May 19, 2023. Because Munywe filed his PRP within one year, it is timely. RCW 10.73.090. On January 10, 2024, more than one year after the mandate, Munywe's appointed counsel filed a "supplemental brief" in support of Munywe's PRP raising double jeopardy as an additional issue. Suppl. Br. of Pet'r at 24. A double jeopardy violation is an exception to the one-year time bar. Former RCW 10.73.100(3) (1989); *In re Pers. Restraint of Schorr*, 191 Wn.2d 315, 320, 422 P.3d 451 (2018). However, our record does not show the filing of a petitioner verification under RAP 16.7(a)(7) for the raising of this new issue. Nor did appointed counsel move the court for permission to file an amended brief raising an issue not raised in Munywe's initial PRP. Notwithstanding these concerns, we exercise our discretion to address double jeopardy.

*Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). To obtain relief in a PRP, a petitioner must demonstrate either a constitutional error resulting in actual and substantial prejudice or a nonconstitutional error that is a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Swagerty*, 186 Wn.2d 801, 807, 383 P.3d 454 (2016). If the petitioner fails to demonstrate actual and substantial prejudice or a fundamental defect, we deny the PRP. *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015).

To meet their burden in a PRP, the petitioner must state with particularity facts that, if proven, would entitle the petitioner to relief. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Bald assertions and conclusory allegations are not sufficient. *Id.* Arguments made only in broad, general terms are also insufficient. *In re Pers. Restraint of Rhem*, 188 Wn.2d 321, 327, 394 P.3d 367 (2017).

In his PRP, Munywe seeks collateral relief based on six arguments: (1) that his convictions for second degree rape and unlawful imprisonment violate double jeopardy, (2) that there was insufficient evidence to support his unlawful imprisonment conviction, (3) that his time for trial and constitutional speedy trial rights were violated, (4) that several of his constitutional rights were violated when he was subjected to an unreasonable cross-gender strip search and when law enforcement purportedly used coercive tactics to induce a confession from him, (5) that he received ineffective assistance of counsel, and (6) that the State committed prosecutorial misconduct. Each argument will be addressed in turn.

7

I. DOUBLE JEOPARDY

Munywe argues that his unlawful imprisonment conviction must be vacated because it violates double jeopardy. We disagree.

We review constitutional claims de novo. *State v. Freeman*, 153 Wn.2d 765, 771, 108 P.3d 753 (2005). The United States Constitution and the Washington Constitution provide defendants coextensive protections from double jeopardy. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *State v. Reeder*, 184 Wn.2d 805, 825, 365 P.3d 1243 (2015). The double jeopardy clause protects against multiple punishments for the same offense. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004). "Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense." *Id.*

We follow several analytical steps to determine legislative intent regarding whether cumulative punishment is authorized. *Freeman*, 153 Wn.2d at 771-73. First, we consider any express or implied legislative intent from the statutes. *Id.* at 771-72. If there is express or implied legislative intent from the statutes, our inquiry ends. *State v. Arndt*, 194 Wn.2d 784, 816, 453 P.3d 696 (2019).

However, if there is no express or implied legislative intent from the statutes demonstrating that cumulative punishment is authorized, then we proceed to the next analytical step, the same evidence test, also known as the *Blockburger* test. *Freeman*, 153 Wn.2d at 772. Under the *Blockburger* test, if the crimes as charged and proved are not the same in law and in fact, they may not be punished separately absent clear and contrary legislative intent. *Id.* at 777.

There are some circumstances for which the *Blockburger* test is not dispositive of legislative intent regarding whether two offenses should be punished separately. *Id.* Consequently, we may turn, where appropriate, to another tool for determining legislative intent in the context of double jeopardy—the merger doctrine. *Id.* "Under the merger doctrine, when the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime." *Id.* at 772-73. In such cases, the defendant is punished only for the greater offense. *See In re Pers. Restraint of Francis*, 170 Wn.2d 517, 525, 242 P.3d 866 (2010). However, even when the offenses would appear to merge under the doctrine, they may still be punished as separate offenses if the offenses have independent purposes or effects. *See Freeman*, 153 Wn.2d at 773; *Arndt*, 194 Wn.2d at 819 ("One exception to the merger doctrine, however, is when overlapping offenses have independent purposes or effects.").

A. BLOCKBURGER TEST

As an initial matter, the parties agree that there is no express or implied articulation of legislative intent in the second degree rape and unlawful imprisonment statutes. Consequently, we turn to the *Blockburger* test and the merger doctrine to determine whether the legislature authorized cumulative punishment for second degree rape and unlawful imprisonment. *See Freeman*, 153 Wn.2d at 771-73.

Munywe argues that his unlawful imprisonment conviction violates double jeopardy under the *Blockburger* test. Pointing to the State's closing argument, Munywe contends that the State used the act of restraint for unlawful imprisonment to prove the forcible compulsion necessary for second degree rape. Munywe's argument is unpersuasive.

Under the *Blockburger* test, we first consider whether the two crimes contain different elements to determine if the crimes are the same in law. *Freeman*, 153 Wn.2d at 772. With respect to that inquiry—second degree rape and unlawful imprisonment clearly contain different elements.[3] Second degree rape requires proof of sexual intercourse, whereas unlawful imprisonment does not. RCW 9A.44.050(1)(a); RCW 9A.40.040(1). Because second degree rape and unlawful imprisonment do not contain the same elements, they are not the same in law.

But our inquiry does not end merely because the offenses are not the same in law. We must next ascertain whether the offenses are the same in fact. *Freeman*, 153 Wn.2d at 777. Crimes are not the same in fact if each offense requires proof of a fact that the other does not. *See Arndt*, 194 Wn.2d at 818. Two crimes are also not the same in fact if different evidence is used to prove each crime. *See State v. Davis*, 174 Wn. App. 623, 633, 300 P.3d 465, *review denied*, 178 Wn.2d 1012 (2013); *see also State v. Noltie*, 116 Wn.2d 831, 848, 809 P.2d 190 (1991). When applying the *Blockburger* test, we consider the crimes *as charged and proved* rather than in the abstract. *Freeman*, 153 Wn.2d at 777.

---

[3] A person is guilty of second degree rape if the person engages in sexual intercourse with another person by forcible compulsion. RCW 9A.44.050(1)(a). " 'Forcible compulsion' means physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped." RCW 9A.44.010(3). A person is guilty of unlawful imprisonment with sexual motivation if they knowingly restrain another person for the purpose of the defendant's sexual gratification. RCW 9A.40.040(1); RCW 9.94A.030(48). "Restrain" is defined as "to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(6). (Former RCW 9A.44.050 (2007), former RCW 9A.44.010 (2007), and former RCW 9.94A.030(48) (2018) were in effect at the time that Munywe committed the offenses. Because the language of the relevant portions have not changed, we cite to the current versions.)

Here, the unlawful imprisonment and the second degree rape were two separate crimes proven with different evidence. In its closing argument, the State contended that Munywe was guilty of first degree kidnapping (a crime that includes the concept of restraining a person, similar to unlawful imprisonment) by restraining A.G. when he grabbed and held onto A.G.'s hand and did not let go when she tried to pull away. And the State presented evidence proving this argument. A.G. testified that while they were walking, Munywe began to hold A.G.'s wrist and that she tried to pull away more than once but was unsuccessful. A.G. further explained that Munywe led her up a hill, while walking in front of her and continuing to hold her wrist. Munywe's acts of grabbing A.G.'s wrist and refusing to let go while leading her up a hill are more than enough to prove that he "restrained" A.G. such that he committed unlawful imprisonment separate from the act of second degree rape. *See* RCW 9A.40.040(1); RCW 9A.40.010(6).

The State did not rely on this same evidence to prove the second degree rape. In its closing argument, the State contended that Munywe used forcible compulsion when he grabbed A.G.'s head and forced his penis into her mouth. The State presented ample evidence proving this argument. A.G. testified that Munywe grabbed her head with both hands and forced his penis into her mouth when they were in the alley. This testimony established that Munywe used "forcible compulsion"—that is, physical force to overcome A.G.'s resistance to being raped. *See* RCW 9A.44.010(3). This forcible compulsion is distinct from the restraint used for the unlawful imprisonment; nothing about how Munywe grabbed A.G.'s wrist and led her up a hill to the alley amounted to sexual intercourse by forcible compulsion. Because the State proved the unlawful imprisonment and second degree rape with different evidence, the offenses were not the same in

fact.[4]  *See Davis*, 174 Wn. App. at 633-34 (holding that attempted murder and first degree assault convictions were not the same in fact where the State proved each crime with different evidence).

B.  MERGER

Having found Munywe's offenses as different in law and fact under the *Blockburger* test, we next turn to address Munywe's argument regarding merger.  *See Arndt*, 194 Wn.2d at 819.  As noted above, "when the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime."  *Freeman*, 153 Wn.2d at 772-73.  Munywe argues that his two convictions merge because "the restraint conduct was also the necessary forcible compulsion to elevate the rape to second-degree."  Suppl. Br. of Pet'r at 15.  We disagree.

The crimes of unlawful imprisonment with sexual motivation and second degree rape by forcible compulsion do not merge because, looking at the elements of each crime, an unlawful imprisonment would not elevate the greater crime of rape from third degree rape to second degree rape.  Whereas second degree rape, as instructed here, requires "forcible compulsion," unlawful imprisonment only requires restraining another person.  RCW 9A.44.050(1); RCW 9A.40.040(1).  Thus, from simply looking at the elements of the two offenses, no merger appears to occur.  *See State v. Atkins*, 130 Wn. App. 395, 401, 123 P.3d 126 (2005) (unlawful imprisonment does not

---

[4] Just because the two crimes are not the same in fact does not mean they must be wholly unconnected—Munywe's motivation to unlawfully imprison A.G. was likely connected to his desire to rape A.G.  Indeed, the State argued in closing that the only reason that Munywe led A.G. to the alley was because he wanted to rape her.  But even though that fact was relevant for the sexual motivation special verdict finding, it was not directly relevant to the elements of the underlying conviction of unlawful imprisonment itself.  *See State v. Atkins*, 130 Wn. App. 395, 401, 123 P.3d 126 (2005) (just because unlawful imprisonment was "incidental to and an aid in effecting" second degree rape, crimes did not violate double jeopardy).

merge with second degree rape because it is not an element that the State must prove for second degree rape).

Munywe attempts to avoid this conclusion by arguing, similarly to his *Blockburger* argument, that merger should occur here because the "restraint" used for his unlawful imprisonment *was* the "forcible compulsion" used to elevate the rape to second degree. Suppl. Br. of Pet'r at 13-14 (internal quotation marks omitted). This same type of factual argument was unsuccessful in *Atkins*. 130 Wn. App. at 401. In *Atkins*, the defendant also argued his convictions for second degree rape by forcible compulsion and unlawful imprisonment merged because the restraint used *was* the forcible compulsion. *Id*. Division Three disagreed. *Id.* After concluding that the elements of unlawful imprisonment did not elevate the rape offense, the court rejected the defendant's factual argument that the only force used to accomplish the rape was his refusal to let the victim leave, i.e. the restraint. *Id.* The court reasoned that because the defendant forced the victim "on himself in the front seat of her car, and he forced himself on her in the back seat," the facts easily satisfied the elements of second degree rape by forcible compulsion separate from his refusal to let the victim leave. *Id.* Here, like in *Atkins*, Munywe's acts of grabbing A.G.'s head with both hands and forcing his penis into her mouth easily satisfied the elements of second degree rape by forcible compulsion separate and apart from Munywe's earlier act of restraining A.G. by grabbing her wrist and refusing to let go. Accordingly, we hold that the unlawful imprisonment did not merge with second degree rape.[5]

---

[5] Because we conclude the offenses do not merge, we need not consider the fourth analytical step of the legislative intent inquiry—whether the offenses have an independent purpose or effect. *See Arndt*, 194 Wn.2d at 819.

Because the offenses are not the same in law or the same in fact, and they do not merge, we conclude that they do not violate double jeopardy.[6]

II. SUFFICIENCY OF THE EVIDENCE

Munywe next claims that there was insufficient evidence to support his unlawful imprisonment conviction because A.G. purportedly "made her own free choices" in deciding where she wanted to go. Br. of Pet'r at 9. We disagree.

A petitioner " 'is prohibited from renewing an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue.' " *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004)). An issue is raised and rejected on direct appeal if the same ground presented in the petition was determined adversely to the petitioner on appeal and that determination was on the merits. *In re Pers. Restraint of Tricomo*, 13 Wn. App. 2d 223, 234, 463 P.3d 760 (2020). "The interests of justice are served by reconsidering a ground for relief if there has been 'an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application.' " *Yates*, 177 Wn.2d at 17 (internal quotation marks omitted) (quoting *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720,

---

[6] Munywe argues that the rule of lenity must be applied in interpreting the ambiguous verdicts in his favor. Munywe asserts that the mere possibility that his acts of forcing A.G.'s head down and his penis into A.G.'s mouth *could* have been viewed by the jury as proof of restraint required to convict him of unlawful imprisonment means that the jury could have relied on the same evidence to find Munywe guilty of both crimes. Munywe also speculates that the jury could have found "a continuing and ongoing restraint from the moment A.G. tried to pull away until after the rape." Suppl. Br. of Pet'r at 16. But the rule of lenity is a tool of statutory interpretation used as a last resort. *City of Bremerton v. Bright*, __ Wn. App. 2d __, 556 P.3d 739, 743 (2024). We will not use the rule of lenity unless all other avenues have been exhausted and there is still ambiguity. *See id.* Here, because we conclude Munywe's convictions do not violate double jeopardy, we decline to apply the rule of lenity.

16 P.3d 1 (2001)). "A petitioner may not avoid this requirement 'merely by supporting a previous ground for relief with different factual allegations or with different legal arguments.' " *Id.* (quoting *Davis*, 152 Wn.2d at 671).

Here, Munywe raises the same sufficiency of the evidence claim that he raised in his SAG as part of his direct appeal. On direct appeal, Munywe claimed that there was insufficient evidence that he restrained, abducted, or kidnapped A.G. and that any crimes took place. *Munywe*, No. 54681-7-II, slip op. at 12. This court rejected those assertions, holding that there was sufficient evidence to support his convictions. *Id.* Now in his PRP, Munywe again claims that insufficient evidence supports his conviction for unlawful imprisonment, but he makes no argument for why the interests of justice require relitigation of this issue. We decline to consider Munywe's previously raised and rejected claim pertaining to the sufficiency of the evidence of his unlawful imprisonment conviction.[7] *See Yates*, 177 Wn.2d at 17.

III. TRIAL CONTINUANCES

Munywe contends that his speedy trial rights were violated because multiple continuances delayed his trial for over a year. We disagree.

Munywe first argues that the trial continuances violated the time for trial rules under CrR 3.3. Because a violation of the time for trial rules is grounded in CrR 3.3, a court rule, it is a nonconstitutional error. And because this is a PRP, Munywe must then demonstrate that any time

---

[7] Munywe also appears to allege that he is actually innocent and "did not commit" second degree rape and unlawful imprisonment. Br. of Pet'r at 9. To the extent that Munywe is doing so, his actual innocence claim fails. Gateway actual innocence claims are "used to avoid procedural time bars so that a court may review other claimed constitutional errors." *In re Pers. Restraint of Weber*, 175 Wn.2d 247, 256, 284 P.3d 734 (2012). Here, a gateway actual innocence claim is irrelevant because Munywe's claims are not procedurally time barred. *Id.*

for trial violation was a fundamental defect resulting in a complete miscarriage of justice. *See Swagerty*, 186 Wn.2d at 807. However, Munywe makes no effort to do so. Thus, his time for trial argument fails. *See Schreiber*, 189 Wn. App. at 113.

Munywe next argues that his constitutional speedy trial right was violated by the 14-month trial delay. Because a constitutional speedy trial violation is a constitutional error, Munywe must show actual and substantial prejudice. *See Swagerty*, 186 Wn.2d at 807. Munywe argues that he was "substantially prejudiced" by the trial delay because his "memory faded," the delay purportedly resulted in one of Munywe's trial witnesses being unavailable to testify, and the delay caused him not to testify at his trial. Br. of Pet'r at 37, 39. However, beyond making these conclusory assertions, Munywe does not demonstrate how this alleged prejudice would have undermined the strong evidence of his guilt presented at trial, including the forensic scientist's testimony about the DNA evidence (from both A.G.'s cheek and Munywe's genitals) and A.G.'s testimony about the circumstances of the rape. As a result, Munywe fails to demonstrate that he was actually and substantially prejudiced by the alleged constitutional speedy trial violation.

IV. FOURTH AND FIFTH AMENDMENT ARGUMENTS

Munywe next argues that law enforcement violated his Fourth Amendment right to be free from unreasonable searches when he was subjected to a cross-gender strip search when his DNA was collected by a female crime scene technician. Munywe also argues that law enforcement used coercive police tactics to induce a confession in violation of the Fifth Amendment, which denied his right to a fair trial. The State argues that Munywe's claims are barred by collateral estoppel because Munywe raised these exact same issues in his federal lawsuits against law enforcement, which were both dismissed on summary judgment. We agree with the State.

Collateral estoppel is designed to prevent the relitigation of issues between parties that are in privity with one another. *In re Pers. Restraint of Metcalf*, 92 Wn. App. 165, 173-74, 963, P.2d 911 (1998). "Collateral estoppel has four requirements: (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of the doctrine must not work an injustice." *Id.* at 174. If a party demonstrates that collateral estoppel applies, then the party against whom collateral estoppel is being asserted against is barred from relitigating the same issues. *See Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004).

Here, all four elements of collateral estoppel are met. First, whether Munywe's Fourth and Fifth Amendment rights were violated were raised in his federal lawsuits. In these lawsuits, Munywe claimed both that he was subjected to an unreasonable search when he was subjected to a cross-gender strip search and that law enforcement used coercive police tactics to induce a confession from him. These are identical to the issues that Munywe raises in this PRP. Second, the prior federal lawsuits resulted in final judgments on the merits because the district court granted summary judgment in favor of law enforcement and against Munywe in each case. Third, Munywe was the plaintiff in both federal lawsuits and is the party against whom collateral estoppel is being asserted against. Fourth, precluding relitigation of the issues will not work an injustice because Munywe had a full and fair opportunity to litigate his claims in federal district court and the federal district court only granted summary judgment against him after considering his claims on the

merits. Thus, we conclude that collateral estoppel bars Munywe from relitigating his constitutional claims related to his treatment by law enforcement.

V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Munywe next makes several arguments that he received ineffective assistance of counsel. He argues that (1) his counsel improperly worked together with the State to obtain trial continuances without a lawful basis, (2) his counsel neglected his letters written in Swahili, (3) his counsel improperly abandoned his motion to dismiss on the first day of trial, and (4) his counsel failed to inquire into how much evidence a juror missed due to her coughing. We disagree.

To show ineffective assistance of counsel, the defendant must demonstrate (1) that their counsel's performance was deficient and (2) that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Yates*, 177 Wn.2d at 35. Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). We strongly presume that counsel's performance was reasonable. *Id.* Generally, counsel's performance is not deficient when counsel's conduct can be characterized as a legitimate trial strategy or tactic. *Id.*

To show prejudice—the second prong of the *Strickland* test—the defendant must demonstrate a reasonable probability that the outcome of the proceeding would have been different if counsel had not performed deficiently. *See State v. Bertrand*, 3 Wn.3d 116, 129, 546 P.3d 1020 (2024). If a petitioner establishes prejudice under the *Strickland* test, they have necessarily met

their burden to show actual and substantial prejudice in the context of a PRP. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

Although a petitioner that establishes prejudice under the *Strickland* test has necessarily met their burden to show actual and substantial prejudice in the context of a PRP, a petitioner is still required to meet their evidentiary burden to state with particularity facts that, if proven, would entitle the petitioner to relief. *See id.*; *Rice*, 118 Wn.2d at 886. For each ineffective assistance of counsel argument, Munywe fails to meet his evidentiary burden.

First, Munywe argues that his counsel "worked together" with the State without a "lawful basis" to obtain trial continuances. Br of Pet'r at 46. However, merely agreeing to a trial continuance does not establish that Munywe's counsel "worked together" with the State to obtain trial continuances "without a lawful basis." And Munywe offers no other evidence to support this allegation. Because Munywe does not meet his factual burden, his argument fails. *See Rice*, 118 Wn.2d at 886 (explaining that the petitioner must state with particularity facts that, if proven, would entitle the petitioner to relief to meet their burden in a PRP).

Second, Munywe argues that his counsel was deficient for neglecting his letters written in Swahili. Munywe characterizes these letters as his complaints about the trial continuances and the fact that his "key witness" would be unavailable if the trial was delayed any further. Br. of Pet'r at 46. But the record shows that his counsel informed the trial court that Munywe had written at least one letter in Swahili, following which the trial court provided Munywe the opportunity to personally raise his concerns about the delay of his trial. But even if there were potentially other letters on this same subject that Munywe's counsel did not raise with the trial court, Munywe fails to demonstrate what his counsel could have done differently, particularly where the trial court had

19

already noted Munywe's objection to the timing of his trial. As a result, Munywe cannot demonstrate deficient performance and this ineffective assistance of counsel claim fails.

Third, Munywe argues that his counsel was deficient for "abandoning" his oral motion to dismiss on the first day of trial. Br. of Pet'r at 46. Munywe is incorrect. Munywe's counsel was out sick on the first day of trial, so the trial court deferred ruling on Munywe's motion until his counsel could appear. The next day on his client's behalf, defense counsel re-raised the issue of Munywe's motion to dismiss. Yet, the trial court ruled that there was no violation. Not only did Munywe's counsel suggest that he agreed with the trial court's ruling, he further stated that he had declined to bring a similar motion himself because such a motion would be frivolous. Munywe must overcome a "strong presumption" that this decision was reasonable, but he offers nothing that meets this burden. *See Grier*, 171 Wn.2d at 33.

Fourth, Munywe points to the coughing juror and argues that his counsel was deficient for failing to inquire into how much evidence this juror may have missed due to her health. But the trial court individually questioned the juror about her coughing and whether she was able to listen to the evidence and decided to leave her on the jury. Notwithstanding that this is a similar argument to one he made in his direct appeal, Munywe fails to show what his counsel should have done differently. Thus, Munywe has failed to establish a factual basis for defense counsel's alleged deficient performance related to this juror. *See Rice*, 118 Wn.2d at 886.

Because Munywe fails to meet his burden to establish deficient performance by his counsel in each alleged incident, his claims for ineffective assistance of counsel fail.

VI. PROSECUTORIAL MISCONDUCT

Munywe argues that the State committed prosecutorial misconduct by misleading the trial court in various ways, improperly collaborating with a DNA analyst to suppress potentially exculpatory evidence, introducing a "falsified and fabricated" document into evidence, and excluding statements made during his interrogation. Br. of Pet'r 49. We disagree.

When a petitioner makes a claim of prosecutorial misconduct in a PRP, they must show actual and substantial prejudice from the prosecutor's remarks. *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 166, 410 P.3d 1142 (2018) (when a prosecutorial misconduct claim is made in the context of a PRP, the petitioner has an additional "hurdle" of showing actual and substantial prejudice). This means showing that there was a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 172.

Here, Munywe does not explain or otherwise demonstrate how any of the State's alleged misconduct affected the jury's verdict. For example, Munywe argues that the State mislead the trial court by withholding crucial information about the status of DNA results from the Washington State Police crime lab. But Munywe fails to explain how withheld DNA test results, if there were any, would have had any impact on the verdict. As another example, Munywe argues that the State introduced a falsified document (a fishing permit) into evidence, which he alleges did not belong to him, but he does not explain any tangible connection of this document to the verdict. Indeed, each of the claims he makes about the prosecutor's alleged misconduct suffers from the same absence of explanation. As a result, Munywe has not met his burden to demonstrate facts that, if proven, would establish that he was actually and substantially prejudiced by any alleged

misconduct. *See Phelps*, 190 Wn.2d at 172; *Rice*, 118 Wn.2d at 886. Accordingly, Munywe's prosecutorial misconduct arguments necessarily fail.

CONCLUSION

Because Munywe has not shown he is entitled to collateral relief, we deny his PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, C.J.

VELJACIC, J.